[Cite as *Lewis v. Jacobs*, 2013-Ohio-3461.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| CARLA LEWIS | : | |
| | : | Appellate Case No. 25566 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 12-CV-1423 |
| v. | : | |
| | : | |
| WILLIE JACOBS | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 9th day of August, 2013.

. . . . . . . . . .

MARY ANN THINNES, Atty. Reg. #0012653, 241 West Riverview Avenue, Dayton, Ohio 45405
      Attorney for Plaintiff-Appellee

ROBERT ALAN BRENNER, Atty. Reg. #0067714, Post Office Box 341021, Beavercreek, Ohio 45434-1021
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, P.J.

{¶ 1}     Respondent-appellant Willie Jacobs appeals from a civil stalking protection order entered against him.  Jacobs contends that the evidence submitted to the trial court was insufficient to establish the necessary elements of R.C. 2903.211 by a preponderance of the

evidence.

**{¶ 2}** We conclude that the trial court's order is supported by sufficient evidence and does not constitute an abuse of discretion. Accordingly, the civil stalking protection order is Affirmed.

## I.   A Relationship Sours

**{¶ 3}** The magistrate made the following findings of fact:

[Petitioner-appellee Carla Lewis] dated [Jacobs] for approximately five years. According to [Jacobs], the parties were engaged. The relationship ended in November or December of 2011. According to [Lewis], there was a history of violence during the relationship.

The most recent series of events began in November of 2011. [Lewis] found a receipt in [Jacobs'] wallet, which caused her to suspect that [Jacobs] was inappropriately involved with a female co-worker. [Lewis] confronted [Jacobs] about the receipt and [Jacobs] lied to [Lewis], denying that he went to lunch with the female co-worker. During their conversation, [Jacobs] became angry and "went off" on [Lewis]. When [Lewis] threatened to call the police, [Jacobs] took her purse, containing her cell phone, and threw it across the bed. He then grabbed [Lewis] and yanked her arm, leaving a bruise. [Jacobs] denied physically assaulting [Lewis], but acknowledged that they engaged in a heated argument and that he lied to [Lewis].

Approximately one week later, [Jacobs] acknowledged that he lied to [Lewis] about lunching with a female co-worker. According to [Lewis], Lewis

officially ended her relationship with [Jacobs] in November. When she broke up with him, he threatened her, stating "you've been using me. I'm going to get revenge on you." According to [Lewis], [Jacobs] has made hand gestures that he would shoot her on several occasions from December of 2011 through February of 2012. [Lewis] testified that [Jacobs] owns several firearms and that she fears he will shoot her.

[Jacobs] denied threatening [Lewis]. Additionally, [Jacobs] claimed that [Lewis] did not officially end their relationship until February of 2012. According to [Jacobs], [Lewis] attended holiday gatherings with him in December of 2011 and continued to sit with him at church.

In late January or early February of 2012, [Jacobs] encountered [Lewis] at a local Wal-Mart. According to [Lewis], [Jacobs] made a scene at the store, telling [Lewis], "I can't live without you. I will kill myself." [Lewis] testified that she tried to get away from [Jacobs], but he continued to follow her around the store. [Jacobs] denied causing a scene and testified that [Lewis] even waited on him while he checked out.

Approximately a week later, in February of 2012, [Jacobs] and [Lewis] encountered each other at Gilly's, a local nightclub and music venue. As [Lewis] was leaving, [Jacobs] reportedly grabbed her arm and asked her who she was with. [Lewis] tried to get away from [Jacobs], but [Jacobs] again grabbed her, tried to kiss her, and followed her to her car. When [Lewis] refused to kiss [Jacobs], [Jacobs] became upset. He called [Lewis] a "bitch," and reportedly threatened

"I'm going to get you." After [Lewis] left Gilly's, [Jacobs] reportedly called her phone 40 times in an hour. [Jacobs] acknowledged calling two or three times. [Lewis] reported the incident to the police.

The following day, [Jacobs] approached [Lewis] in church and gave her a note which read "God forgive me." [Jacobs] followed [Lewis] when [Lewis] went to pick up her granddaughter. He reportedly told [Lewis], "I cried all night for what I did to you." [Jacobs] acknowledged giving [Lewis] the note.

Finally, the Monday prior to the hearing, [Lewis] received an envelope containing un-posed, nude pictures of her. She believes the pictures were taken by [Jacobs] without her knowledge or consent and sent to her. The note with the pictures read "thank you, thank you, thank you." [Jacobs] denied taking or sending the pictures.

**{¶ 4}** There is evidence in the record to support these findings.

## II.   The Course of Proceedings

**{¶ 5}** Carla Lewis filed a petition for a civil stalking protection order against Willie Jacobs in February 2012. A temporary ex parte order of protection was entered the same day, and a hearing on the matter was set. Prior to the hearing, Jacobs filed a petition for a civil stalking protection order against Lewis. The cases were consolidated. At the start of the hearing, Jacobs voluntarily dismissed his petition, and the hearing proceeded solely on Lewis's petition.

**{¶ 6}** Following the hearing, the magistrate entered an order granting the protection

order. Jacobs filed objections, which were subsequently overruled by the trial court. The protection order is set to expire on April 1, 2014. From the civil stalking protection order, Jacobs appeals.

### III. Evidence in the Record Supports the Predicate Finding
### for a Civil Stalking Protection Order, and the Trial Court
### Did Not Abuse its Discretion by Entering the Order

{¶ 7} Jacobs's sole assignment of error states as follows:

THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING PETITIONER'S REQUEST FOR THE ISSUANCE OF A CSPO AGAINST THE RESPONDENT.

{¶ 8} Jacobs contends that the evidence presented was not sufficient for the issuance of a civil stalking protection order. Specifically, he contends that there is no evidence of a pattern of conduct, and no evidence to support a finding that he acted knowingly.

{¶ 9} When assessing whether a civil stalking protection order should have been issued pursuant to R.C. 2903.214, the reviewing court must determine whether the petitioner proved by a preponderance of the evidence that the respondent engaged in conduct constituting menacing by stalking. *Lane v. Brewster,* 12th Dist. Clermont No. CA2011-08-060, 2012-Ohio-1290, ¶ 50; *Olenik v. Huff,* 5th Dist. Ashland No. 02-COA-058, 2003-Ohio-4621, ¶ 16-18. Whether the evidence presented is legally sufficient to sustain a judgment is a question of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 10} Menacing by stalking is defined as "engaging in a pattern of conduct" that

knowingly "cause[s] another to believe that the offender will cause serious physical harm to the other person or cause mental distress to the other person."  R.C. 2903.211(A)(1). In order to establish a pattern of conduct, only two or more actions closely related in time are required. R.C. 2903.211(D)(1).  In determining what constitutes a pattern of conduct, courts must take every action of the respondent into consideration, even if some of the actions in isolation do not seem particularly threatening.  *Middletown v. Jones,* 167 Ohio App.3d 679, 2006-Ohio-3465, 856 N.E.2d 1003, ¶ 10 (12th Dist.).   Explicit threats are not necessary; therefore, nonverbal acts directed at the victim may be enough to cause the victim reasonably to believe that physical harm will ensue.  *State v. Smith*, 126 Ohio App.3d 193, 709 N.E.2d 1245 (7th Dist.1998).

{¶ 11}    "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."  R.C. 2901.22(B).

{¶ 12}   The magistrate and the trial court found that Jacobs had "engaged in a pattern of conduct, of two or more instances, closely related in time, that has reasonably caused [Lewis] to fear that [Jacobs] will physically harm her."   Thus, the protection order was granted.

{¶ 13}   The magistrate evidently credited the testimony of Lewis where her testimony conflicted with that of Jacobs.   The credibility of the witnesses and the weight to be given to their testimony are primarily matters for the trier of facts to resolve.  *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.   This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict.  *State v. Bradley,* 2d Dist.

Champaign No. 97-CA-03, 1997 WL 691510, \*4 (Oct. 24, 1997).

{¶ 14} Lewis's testimony, which is not inherently unworthy of belief, establishes facts upon which the trial court could reasonably rely in finding that Jacobs engaged in a pattern of conduct closely related in time following the demise of the parties' relationship. The evidence demonstrates that Jacobs acted in a threatening manner toward Lewis. Specifically, he made non-verbal references to shooting her, and she knew that he owned several firearms. He also grabbed her arm on two separate occasions, leaving a bruise following one incident. He continued to contact her and verbally threatened to "get her," and to "get revenge." During the encounters, it appears that Jacobs would act nicely toward Lewis until she rebuffed him, at which point he started threatening her or physically touching her. These actions took place over the course of about three months. These facts support the trial court's finding that there was a pattern of conduct.

{¶ 15} The trial court could reasonably find that Jacobs' actions were committed with the requisite culpability. There is evidence that Jacobs made gestures indicating that he would shoot Lewis, who was aware that Jacobs owned guns. And Jacobs made explicit threats on at least two occasions. From these facts, the trial court could find that Jacobs knew that his conduct was likely to cause Lewis to believe that Jacobs would cause her to suffer serious physical harm or mental distress.

{¶ 16} The civil stalking protection order issued by the trial court is supported by the evidence, and does not constitute an abuse of discretion. Jacobs's sole assignment of error is overruled.

## IV.   Conclusion

{¶ 17}   Jacobs's sole assignment of error having been overruled, the civil stalking order from which this appeal is taken is Affirmed.

. . . . . . . . . . . . .

FROELICH and WELBAUM, JJ., concur.

Copies mailed to:

Mary Ann Thinnes
Robert Alan Brenner
Hon. Dennis J. Langer