[Cite as *L.J. v. M.P.*, 2021-Ohio-312.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| L.J., | : | |
| Plaintiff-Appellee, | : | No. 109403 |
| v. | : | |
| M.P., | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 4, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-925348

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Matthew Greenwell, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Erika B. Cunliffe, Assistant Public Defender, *for appellant.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Appellant, M.P., appeals the grant of a civil stalking protection order ("CSPO") in favor of appellee, L.J. Because there was competent evidence presented

at the hearing that appellant violated R.C. 2903.211, we overrule appellant's sole assignment of error and affirm the trial court's decision.

{¶ 2} L.J. filed a petition for a CSPO. Within the petition, L.J., a probation officer, sought protection from appellant, who was a probationer under her supervision. L.J. asserted details regarding her interactions with appellant on two dates and the statements and threats he made toward her. The trial court held a hearing on December 17, 2019. At the hearing, L.J. stated that she is a probation officer in Cuyahoga County and supervises defendants assigned to the mental health docket. She indicated that she was supervising appellant on three cases. She testified that on November 5, 2019, she met with appellant and she gave him notice of a probation violation hearing for failing a drug screen. Appellant glared at her and raised his voice, and didn't keep his hands in sight as directed. He kept clenching his fists, and L.J. became concerned for her safety and contacted protective services officers. She also believed he was attempting to intimidate her. He was escorted out of the probation department on her order. Appellant did not appear for the November 8, 2019 hearing regarding his probation violation. On November 11, 2019, a capias for appellant's arrest was issued. Appellant's attorney objected to the introduction of evidence of appellant's actions on November 5, 2019, claiming that the incidents were not included in the petition. The court overruled the objection.

{¶ 3} L.J. testified that on November 15, 2019, in the afternoon, she called and spoke to appellant and asked when he was going to come in as directed by his

case manager. He said that he was not told to come in. Appellant yelled at L.J., complaining he had just been in and asking why there was a warrant. L.J. told appellant she would not tolerate him yelling at her, that she was to be addressed as officer, and his aggressive behavior would not be tolerated. Appellant stated where he was, but raised his voice and said he had no way to come in. He then said he would get a ride. Appellant appeared at the probation offices at 3:00 p.m. and was arrested on the court's warrant. He resisted arrest, banged his head against the wall when being taken to the holding cell, and had to be restrained. He was yelling and physically aggressive. While in the holding cell, he asked to speak to his probation officer. He was told by the arresting officers that the warrant was issued because of his alleged violations and he said, "I knew I was going to be arrested. When I get out, I am going to kill her." When he was brought out of the holding cell, he continued yelling and resisting and glared at L.J. and said he was going to kill her.

{¶ 4} On cross-examination, L.J. indicated that appellant's physical actions were threating on November 5, 2019, but conceded he did not verbalize a threat. Thereafter, L.J. told the court that if appellant is released from jail, she fears for her safety. After the testimony, appellant's attorney argued to the court that the elements of menacing by stalking were not met; that there was no pattern. L.J. argued appellant threatened her on two separate days and twice on the second day. The trial court found that by the preponderance of the evidence, the petitioner was entitled to the CSPO, noting that there need not be overt threats to constitute menacing.

{¶ 5} Appellant has raised one assignment of error, arguing that, "the trial court erred when it granted the civil protection order where the petition failed to demonstrate that appellant violated R.C. 2903.211." First, he claims that no pattern of conduct was presented, and second, he argues that the evidence did not show that he knowingly acted to cause L.P. to believe he would cause physical harm or to cause her to suffer emotional distress.

{¶ 6} R.C. 2903.214 allows a petitioner to obtain a CSPO by filing a petition alleging that the respondent engaged in a violation of RC. 2903.211, menacing by stalking. RC. 2903.211(A)(1) defines menacing by stalking as follows:

> No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person. In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person or the other person's family or household member or mental distress to the other person or the other person's family or household member, the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

{¶ 7} To obtain a CSPO, a petitioner needs to show, by a preponderance of the evidence, that the respondent caused the petitioner to believe he would cause petitioner mental distress or physical harm, not that the respondent did in fact cause physical harm or mental distress. *M.D. v. M.D.*, 8th Dist. Cuyahoga Nos. 106851 and 106758, 2018-Ohio-4218, ¶ 98-99, citing *State v. Spaulding*, 151 Ohio St.3d 378,

2016-Ohio-8126, 89 N.E.3d 554, and *State v. Horsley*, 10th Dist. Franklin No. 05AP-350, 2006-Ohio-1208, ¶ 48.

{¶ 8} "Pattern of conduct" is defined as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C. 2903.211(D)(1). As stated by one court, "In determining what constitutes a pattern of conduct, courts must take every action of the respondent into consideration, even if some of the actions in isolation do not seem particularly threatening." *Lewis v. Jacobs*, 2d Dist. Montgomery No. 25566, 2013-Ohio-3461, ¶ 10, citing *Middletown v. Jones*, 167 Ohio App.3d 679, 2006-Ohio-3465, 856 N.E.2d 1003, ¶ 10 (12th Dist.). "Explicit threats are not necessary; therefore, nonverbal acts directed at the victim may be enough to cause the victim reasonably to believe that physical harm will ensue." *Id.*, citing *State v. Smith*, 126 Ohio App.3d 193, 709 N.E.2d 1245 (7th Dist.1998). "Further, mental distress need not be incapacitating or debilitating, and expert testimony is not required. *Rufener v. Hutson*, 8th Dist. Cuyahoga No. 97635, 2012-Ohio-5061, ¶ 17, citing *Jenkins v. Jenkins*, 10th Dist. Franklin No. 06AP-652, 2007-Ohio-422, ¶ 19." *N.P. v. T.N.,* 8th Dist. Cuyahoga No. 106314, 2018-Ohio-2647, ¶ 23. "Rather, the trial court '"may rely on its knowledge and experience in determining whether mental distress has been caused."' *Rufener* at ¶ 17, quoting *State v. Wunsch*, 162 Ohio App.3d 21, 2005-Ohio-3498, 832 N.E.2d 757, ¶ 18 (4th Dist.)." *Id.*

{¶ 9} Where there is a preponderance of the evidence that the respondent committed a violation of R.C. 2903.211, the court is empowered to issue a CSPO.

*M.J.W. v. T.S.,* 8th Dist. Cuyahoga No. 108014, 2019-Ohio-3573, ¶ 22.  We review a court's grant of a CSPO under an abuse of discretion standard.  *Rufener* at ¶ 12.  An abuse of discretion is where the trial court's decision is unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.8d 217, 219, 450 N.E.2d 1140 (1988).  The trial court properly grants a CSPO if there is "'some competent, credible evidence to support each element of menacing by stalking.'"  *M.J.W.* at ¶ 26, citing *Strausser v. White*, 8th Dist. Cuyahoga No. 92091, 2009-Ohio-8597, ¶ 88.

{¶ 10} First, we note that L.J. is a probation officer.  That fact doesn't change our review.  Despite her job, she is entitled to the equal application of the law. And even though it is tempting to give more credence to the direness of the threats made in this case given L.J.'s position as a probation officer, no deference to her position can be given, or has been given, in our review of this case.

{¶ 11} In this case, there was competent, credible evidence presented to allow the trial court to grant the CSPO.  L.J. testified to three instances of verbal and/or nonverbal threats made on two different days.  She testified as to threatening behavior on November 5th, verbal aggression toward her on the phone on November 15th, and actual threats made in person that he would kill her.  Further, she believed that appellant would act on those threats.  Such actions by a respondent made on two separate occasions are enough to establish a pattern of conduct under R.C. 2903.211.  L.J.'s belief that appellee would act on those threats is not unreasonable considering he is a probationer with a conviction for a violent felony and that his actions escalated from threatening posturing on November 5th to actual

threats to kill her. As such, her testimony was sufficient for the trial court to find the elements of R.C. 2903.211 met and the trial court did not err in issuing the CSPO.

{¶ 12} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MICHELLE J. SHEEHAN, JUDGE

LARRY A. JONES, SR., P.J., CONCURS;
EILEEN A. GALLAGHER, J., DISSENTS WITH SEPARATE OPINION ATTACHED


EILEEN A. GALLAGHER, J., DISSENTING:

{¶ 13} I respectfully dissent from the opinion of my learned colleagues.

{¶ 14} The appellant-respondent ("M.P.") in this case is a mentally ill individual. He was under the supervision of the Cuyahoga County Probation Department-Mental Health Unit Component at the time of the alleged acts which served as the basis for the issuance of the Civil Stalking Protection Order. In order for an individual to be supervised by that unit, he or she must have a diagnosis which includes psychosis (e.g., schizophrenia, bipolar with psychotic features). The

appellee-petitioner ("L.J.") was, at the time of the alleged acts, appellant-respondent's probation officer.

{¶ 15} It should be noted that the record fails to include page four of Form 4 which requires the signature of the petitioner under the caveat. "The information above is true, complete, and accurate to the best of my knowledge. I understand that knowingly providing false information in this document may result in a contempt of court finding against me which could result in a jail sentence and fine, or criminal penalties under R.C. 2921.13"

{¶ 16} Although the Petition for the Civil Stalking Protection Order, which was prepared by L.J., makes no reference to any issue when M.P. reported to the probation department on November 5, 2019, she was permitted, over objection, to testify as to what she perceived to have occurred on that date. According to L.J., after providing M.P. with a notice of a probation violation hearing, he "glared at this officer in what appeared to be an attempt to intimidate her. He raised his voice and continued glaring." She further testified that he "became increasingly agitated and he began clenching his fists back and forth." According to L.J., whilst she was "in the process of contacting the protective services officers for assistance," M.P.'s case manager, who was apparently present at the time, escorted him from the offices. A probation violation hearing was held two days later.

{¶ 17} Next to the prepared text of L.J.'s petition is a handwritten notation "11/05." In the paragraph prepared by L.J. and which may, or may not be her office reporting notes, she wrote:

DEF REPORTED. CONTACT INFORMATION VERIFIED. 216-***-**** IS BEST WAY TO GET A HOLD OF DEF. THIS IS DEF GF PHONE NUMBER. NO CONTACT WITH LE. DEF SAID THAT HE WAS HIRED BY AMAZON AND THAT HE STARTS ON FRIDAY. HE WILL BE WORKIGN [sic] SUN THRU THURS 7:30AM-5PM. THIS OFFICER CONGRATULATED THE DEFENDAT.[sic] DEF TO PROVIDE OFFICE WITH PROOF OF EMPLOYMENT. DEF SAID THAT HE DID SOMETHING IRRESPONSIBLE AN FORGORT [sic] HIS 12 STEP MEETIGNG [sic] SIGN IN SHEET. ALTHOUGH HIS MURTIS TAYLOR CASE MANAGER BROUGHT HIM HERE, AND WILL VOUGE [sic] FOR HIM ATTENDING MEETINGS. THIS OFFICER ASKED DEF WHEN HE LAST USED ANYTHING. AND HE SAID THAT HE CAN'T RECALL. THIS OFFICER EXPLIANED [sic] TO DEF THAT HIS LAST TEST WAS POSITIVE. DEF SAID I KNOW YOU ARE TRYIGN [sic] TO BE LENIENT WITH ME. THIS OFFICER SAID THAT I WAS NOT BEING LENIENT IN ANY WAY AND THAT HE WOULD BE GOING TO COURT THIS WEEK. DEF UNDERSTANDS. HE SAID THAT HE IS EXPECTING A CALL FOR A DATE FOR ASSESMENT [sic] FOR COUNSELING. DEF SAID THAT HE WOULD NOTIFY THIS OFFICER UPON FINDING OUT THE DATE. DEF SAID THAT HE HASN'T HAD ANYTHING TO DRINK SINCE HE LAST TESTED POSITIVE FOR ALCOHOL. HE SAID HE ISN'T MESSOMG AROUND ANYMORE AN TRYING TO GET IN TROUBLE. DEF PROVIDED WITH WAIVER OF PRELIIM [sic] HEARING AND NOTCEOF [sic] PV HEARING.

{¶ 18} L.J.'s notes and her oral testimony fail to comport with one another. If, in fact, the above notes were prepared contemporaneously with M.P.'s office visit, they certainly would have contained her claims of agitation demonstrated by M.P. if, in fact, that behavior by M.P. did occur.

{¶ 19} Under cross-examination, as to the purported events of November 5, 2019 to which she testified, L.J. admitted that M.P., on that date, did not make any verbal threats or any "overt attempts at harming" her nor did he attempt to "lunge across the desk" at her.

{¶ 20} L.J. then testified that, on November 15, 2019, she contacted M.P. via telephone and inquired as to at what time he would be reporting to her office. M.P. allegedly responded that his case manager never told him to report. "The Defendant then raised his voice and yelled, quote 'Ma'am, what the f***? I was just there on Tuesday and saw your supervisor. Why do I have to come back down? Why do I have to come in? Why is there a warrant? I have a warrant. You going to arrest me.'" L.J. then testified that "[t]his officer told the Defendant that I would not tolerate in any way, shape or form him yelling at me, and I was to be addressed as officer, nor would aggressive behavior be tolerated at any time." M.P. established his location and indicated that he would make arrangements to report.

{¶ 21} According to L.J., M.P. did report to her office on November 15, 2019 and was arrested on an active warrant. She testified that "when he was taken into custody, he resisted arrest, and as he was being taken to the holding cell, he banged his head against the wall, he was restrained and sheriff's deputies were called to assist. The Defendant was yelling and continued to be physically aggressive." According to L.J., while he was in "holding" he asked to speak with her but she failed to indicate that she did, in fact, go to the holding area. L.J. claims that M.P. stated, "I knew I was going to be arrested. When I get out, I am going to kill her."

{¶ 22} That testimony suggests that those words were related to her rather than being heard by her. She did, however, testify that when M.P. was removed from the holding cell, "he continued yelling and resisting while in handcuffs, and he then glared at this officer and said, quote, 'I said I was going to kill her,' end quote."

**{¶ 23}** As to the alleged incident of November 15, 2019, L.J. testified that while in custody, M.P. "lunged towards me and glared at me and then continued to resist."

**{¶ 24}** Menacing by stalking requires that a person engage in a pattern of conduct that causes another person to believe that the offender will cause physical harm or mental distress to the other person. "Pattern of conduct" is defined as "two or more actions or incident closely related in time."

**{¶ 25}** I find that there was no demonstrable pattern of conduct which would have supported the issuance of a Civil Stalking Protection Order as the only events which could support L.J.'s claims occurred only on November 15, 2019 and, therefore, I would reverse the judgment of the trial court.