[Cite as *State v. Gonzalez*, 2022-Ohio-2870.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 111194 |
| v. | : | |
| MIGUEL A. GONZALEZ, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 18, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-20-650867-A and CR-20-652303-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Alicia Harrison, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Michael V. Wilhelm, Assistant Public Defender, *for appellant.*

FRANK DANIEL CELEBREZZE, III, J.:

{¶ 1} Appellant Miguel Gonzalez appeals his convictions of menacing by stalking, violating a protection order, and aggravated menacing. He argues that his convictions were against the manifest weight of the evidence; that the trial court

gave an improper Evid.R. 404(B) instruction; that he was denied effective assistance of counsel; that the trial court erroneously allowed a witness to testify as to an impermissible legal conclusion; that the trial court failed to properly limit the scope of testimony on redirect examination, and that all of these alleged errors taken together constitute cumulative error requiring a new trial. After a thorough review of the applicable law and facts, we affirm.

## I. Factual and Procedural History

{¶ 2} This appeal stems from two cases that were tried together. A grand jury indicted Miguel Gonzalez on two counts of menacing by stalking for conduct occurring between May 6, 2020, to May 26, 2020, in violation of R.C. 2903.211(A)(1) (Counts 1 and 2). Count 1 further alleged that Gonzalez trespassed on the land or premises where the victim lived, was employed, or attended school, elevating the violation to a fourth-degree felony. Count 2 further alleged that the offender had been previously convicted of or plead guilty to a violation within this code section, elevating the violation to a fourth-degree felony.

{¶ 3} A few months later, a grand jury indicted Gonzalez for conduct occurring between June 26, 2020, to July 3, 2020. The charges included: menacing by stalking in violation of R.C. 2903.211(A)(1) with a furthermore clause alleging that the offender has been previously convicted of or pled guilty to a violation within this code section, elevating the violation to a fourth-degree felony (Count 3); violating a protection order in violation of R.C. 2919.27(A)(1), a third-degree felony with a furthermore clause that the offender violated the protection order while

committing a felony (Count 4); and aggravated menacing in violation of R.C. 2903.21(A), a first-degree misdemeanor (Count 5). All charges pertained to the same victim, N.M., who was romantically involved with Gonzalez prior to the alleged conduct. The case proceeded to a jury trial where the jury heard from two witnesses: the victim and Detective Jeff Grabski, a detective from the Cleveland Police Department. At trial, the following facts were adduced.

{¶ 4} The victim, N.M., and Gonzalez were casually dating for about eight months. On May 6, 2020, at around 2:00 a.m., N.M. received a phone call from Gonzalez's telephone number. The voice on the other end was not Gonzalez; it was a woman who introduced herself as J.P. J.P. explained that Gonzalez was at her home harassing her. N.M. then stated that she heard a scuffle and the call dropped. About an hour later, another number called her phone — it was J.P. calling from her own phone. J.P. told N.M. that she (J.P.) was previously in a relationship with Gonzalez and that it was very abusive and toxic. J.P. also sent N.M. an older photo of her beaten up face, allegedly caused by Gonzalez. Finally, J.P. revealed that Gonzalez posted nude photographs of N.M. on his social media accounts. As a result of these conversations, N.M. ended her relationship with Gonzalez, instructing him to cease contact with her and blocking his telephone number.

{¶ 5} Despite N.M.'s instruction, Gonzalez continued contacting her, even calling her from a different number later that same day and showing up at her house to collect his belongings. On May 8, 2020, Gonzalez approached N.M. and J.P., who were having a conversation at Edgewater Park, causing them to proceed to their

vehicles and leave the park. Gonzalez continued showing up at N.M.'s home, delivering flowers, leaving gifts in her vehicle, proposing marriage, and contacting her despite her explicit requests. On May 28, 2020, N.M. obtained a protection order against Gonzalez.

{¶ 6} The protection order did not deter Gonzalez. He continued to appear at N.M.'s home, contact her via telephone and text message, and followed N.M. to restaurants and bars. N.M. testified that she only felt peace when he was arrested for violations of the protection order.

{¶ 7} Following a three-day jury trial, a jury found Gonzalez guilty of all counts. The trial court sentenced Gonzalez to 18 months in prison that were to run concurrently. Gonzalez appeals his convictions, alleging six assignments of error for our review.

> I. Miguel Gonzalez's convictions in count 2 and count 3 are against the manifest weight of the evidence and, accordingly, Miguel Gonzalez was denied his fundamental right to a fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.
>
> II. The Trial Court's improper 404(B) instruction was confusing to the jury and denied him his fundamental right to a fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.
>
> III. Trial counsel provided ineffective assistance of counsel, as guaranteed by the United States Constitution, when he failed to object to impermissible testimony that provided legal conclusions and misled the jury.
>
> IV. The trial court committed plain error in allowing in impermissible testimony by Detective Grabski in violation of Mr. Gonzalez's right to a fair trial.

V. The trial court committed an abuse of discretion in allowing testimony outside the scope of cross-examination during redirect examination which violated Mr. Gonzalez's right to a fair trial.

VI. The cumulative effect of multiple errors at trial, even if not singularly sufficient to warrant reversal, together deprived Mr. Gonzalez of his fundamental right to a fair trial.

## II. Law and Argument

### A. Manifest Weight

{¶ 8} In his first assignment of error, Gonzalez argues that his convictions of Counts 2 and 3 were against the manifest weight of the evidence.

{¶ 9} A challenge to the manifest weight of the evidence "'involves the inclination of the greater amount of credible evidence.'" *State v. Harris*, 8th Dist. Cuyahoga No. 109060, 2021-Ohio-856, ¶ 32, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Weight of the evidence examines "'the evidence's effect of inducing belief.'" *Id.*, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. In reviewing a manifest-weight claim, the court must consider all of the evidence in the record, the reasonable inferences made from it, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice * * *.'" *Id.*, quoting *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). Finally, the discretionary power to grant a new trial should be reserved for exceptional cases where "the evidence weighs heavily against the conviction." *Thompkins* at 387.

{¶ 10} Under Counts 2 and 3, the state was required to prove, beyond a reasonable doubt, that Gonzalez's conduct violated R.C. 2903.211(A)(1), which provides:

> No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person. In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person or the other person's family or household member or mental distress to the other person or the other person's family or household member, the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

{¶ 11} A "pattern of conduct" constitutes "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C. 2903.211(D)(1). Courts must take every action into consideration, even if some actions in isolation do not appear threatening. *L.J. v. M.P.*, 8th Dist. Cuyahoga No. 109403, 2021-Ohio-312, ¶ 8, citing *Lewis v. Jacobs*, 2d Dist. Montgomery No. 25566, 2013-Ohio-3461, ¶ 10. "[M]ental distress need not be incapacitating or debilitating, and expert testimony is not required." *Id.*, citing *Rufener v. Hutson*, 8th Dist. Cuyahoga No. 97635, 2012-Ohio-5061, ¶ 17, citing *Jenkins v. Jenkins*, 10th Dist. Franklin No. 06AP-652, 2007-Ohio-422, ¶ 19. The trier of fact "'may rely on its knowledge and experience in determining whether mental distress has been caused.'" *Rufener* at ¶ 17, quoting *Smith v. Wunsch*, 162 Ohio App.3d 21, 2005-Ohio-3498, 832 N.E.2d 757, ¶ 18 (4th Dist.).

{¶ 12} In support of his argument, Gonzalez argues that the state did not prove that N.M. was afraid or fearful for her physical safety. He argues that the state only proved that N.M. was frustrated and inconvenienced by Gonzalez's conduct. We note that R.C. 2903.211(A)(1) requires only a *belief* that Gonzalez could cause physical harm *or* mental distress. Further, the statute does not require a person to actually suffer physical harm or mental distress, rather, the state must prove that the defendant's conduct induced a belief that the defendant will cause physical harm or mental distress. *M.J.W. v. T.S.*, 8th Dist. Cuyahoga No. 108014, 2019-Ohio-3573, ¶ 23, citing *M.D. v. M.D.*, 2018-Ohio-4218, 121 N.E.3d 819, ¶ 98-99 (8th Dist.); *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554; *State v. Horsley*, 10th Dist. Franklin No. 05AP-350, 2006-Ohio-1208, ¶ 48.

{¶ 13} To establish Count 1, the state was required to proffer evidence of conduct occurring from May 6, 2020, to May 26, 2020. N.M. testified that after the May 6 phone calls, she asked Gonzalez to remove the photos of her that he posted online and he responded negatively, by calling N.M. names and stating that no one tells him what to do. N.M. then told Gonzalez to never contact her again and blocked his phone number.

{¶ 14} N.M.'s testimony further evidences that she believed Gonzalez was capable of causing physical harm and that he was causing her mental distress. Later that day, Gonzalez called N.M. from another phone number. He also showed up at her house to collect his belongings. N.M. did not open the door and threatened to call the police. When asked why she reacted this way, she testified:

[N.M.]: I didn't want to get beaten. I saw what he did, I saw the picture of what he did to this woman and then the way he was reacting and so aggressive and the way he was speaking to me, I didn't want to deal with that. I told him I'd call the police, when the police got there, I'd give him his stuff.

[STATE]: Did he leave?

[N.M.]: He left. Eventually, he left. I called the police — I had already called the police for them to come and I called them back and told them that he had left * * *.

(Tr. 514-515.)

{¶ 15} This court has held that calling the police supports a finding of mental distress. *See Chagrin Falls v. Ptak*, 8th Dist. Cuyahoga No. 109342, 2020-Ohio-5623, ¶ 35; *State v. Calliens*, 8th Dist. Cuyahoga No. 109005, 2020-Ohio-4064, ¶ 48. Plainly, Gonzalez's conduct rose to a level where N.M. felt it necessary to involve the police.

{¶ 16} On May 8, N.M. coincidentally ran into J.P. at Edgewater Park and the two began discussing Gonzalez when Gonzalez actually showed up and began harassing the pair. N.M. testified that Gonzalez was screaming and calling them names. J.P. and N.M. were forced to retreat to their vehicles and leave the park in order to escape Gonzalez's harassment. N.M. elaborated that this incident left her in shock and made her feel nervous.

{¶ 17} N.M. testified that the day following the Edgewater incident, she discovered a teddy bear and flowers inside of her car. She also discovered three bullets placed in the flowerpot on her porch. These incidents made her scared, so

much so that she went to the police station and made a report. When questioned as to why these actions made her scared, N.M. stated:

> [N.M.]: I mean, they're bullets. I feel like that's a threat. It's like, I'm going to kill you, or you know, thinking about what he did to [J.P.], I'm thinking, [w]ell, that could happen to me or even worse. And I have my son in my house, too. I have to — I mean, it's scary.

(Tr. 521-522.)

{¶ 18} N.M.'s reactions to these various incidents are in conformity with someone acting as a result of mental distress. In addition to involving the police, N.M. responded to Gonzalez's behavior by putting garbage bags over her windows. She testified that Gonzalez continued coming to her house, knocking on her doors, looking through the windows. She testified that she was not safe at home. This court has noted that "'[e]vidence of [a] changed routine can support a finding of mental distress.'" *Ptak*, 8th Dist. Cuyahoga No. 109342, 2020-Ohio-5623, at ¶ 35, quoting *Morton v. Pyles*, 7th Dist. Mahoning No. 11 MA 124, 2012-Ohio-5343, ¶ 15. When Gonzalez was arrested on May 26, Detective Jeff Grabski of the Cleveland Police Department interviewed N.M. and noted that she was nervous, and "maybe a little scared." (Tr. 646.)

{¶ 19} After reviewing the totality of the evidence, including all witness testimony and reasonable inferences, we find Gonzalez's argument that the state did not establish that N.M. was fearful of physical harm as it pertains to Count 2 completely unfounded. The state was only required to prove that Gonzalez's actions caused N.M. to believe that she or her family would suffer physical harm by Gonzalez. The record not only supports that N.M. believed physical harm was

imminent, but that this belief rose to the level of fear. The evidence presented at trial reflects that N.M. feared physical harm to herself as well as her son, and additionally, acted in conformity with someone experiencing mental distress, by engaging in actions such as covering her windows and contacting the police.

{¶ 20} To convict Gonzalez of Count 3, the state was required to prove the same menacing by stalking elements, but that the conduct occurred from June 26, 2020, to July 3, 2020. At this point, a protection order was in place against Gonzalez.

{¶ 21} N.M. testified that on June 26, 2020, Gonzalez drove past her home again. N.M. expressed that she was frustrated because the protection order did not change his behavior. On July 1, 2020, N.M. was at Cinema Lounge, a place she frequents, and she testified that, before entering, she checked the parking lot to make sure Gonzalez's car wasn't there. After leaving Cinema Lounge, N.M. proceeded to Memphis Tavern where she again checked the parking lot. Gonzalez showed up and offered to buy her a drink. She also testified that she received at least four phone calls from Gonzalez on this date. N.M. noted that Gonzalez was undeterred by the protection order, and this made her feel "like [she] couldn't live [her] life at all, like [she] had to constantly look over [her] shoulder." (Tr. 579.) N.M. also testified that she only felt relief after Gonzalez was arrested for violating the protection order, because that was the only time he did not bother her.

{¶ 22} The totality of the evidence proffered in support of Count 3 supports that N.M. believed Gonzalez was capable of harming her, feared him, and that his

actions caused her mental distress. The record indicates that Gonzalez was undeterred by the protection order and that fact scared N.M. and made her feel like she was unable to live her life.

{¶ 23} Based on the foregoing, this is not the exceptional case where the evidence weighs heavily against conviction for either Counts 2 or 3. Accordingly, Gonzalez's first assignment of error is overruled.

## B. Trial Court's Evid.R. 404(B) Instruction

{¶ 24} In his second assignment of error, Gonzalez argues that the trial court erred in instructing the jury as it related to Gonzalez's prior menacing by stalking conviction.

{¶ 25} Counts 2 and 3 contained furthermore provisions raising the offense of menacing by stalking to a fourth-degree felony if Gonzalez "previously has been convicted of or pleaded guilty to a violation of this section[.]" R.C. 2903.211(B)(2)(a). Prior to trial, Gonzalez stipulated to his prior conviction of menacing by stalking, occurring in 2015.

{¶ 26} Gonzalez takes issue with the following instruction given by the trial judge when reviewing the jury instructions.

> The evidence that was received that the defendant was convicted of menacing by stalking — evidence was received that the defendant was convicted of menacing by stalking. Any other crimes which were — any other evidence which were received — which was received about the commission of other crimes is only meant for a limited purpose. It was not received, and you may not consider it, to prove the character of the defendant in order to show that he acted in conformity or in accordance with that character.

If you find that the defendant was convicted of menacing by stalking, you may consider that evidence only for the following purposes: To test the defendant's credibility or believability and the weight to be given; to decide whether it proves the absence or mistake or accident; the defendant's motive, opportunity, intent or purpose, preparation, plan, plan to commit the offenses charged in the trial; or knowledge of circumstances surrounding the offenses charged in this trial; or the identity of the person committing. That evidence cannot be considered for any other purpose.

(Tr. 703-704.)

{¶ 27} Gonzalez argues that in stipulating to his prior offense of menacing by stalking, he was stipulating only to the furthermore provisions of Counts 2 and 3, not to an Evid.R. 404(B) instruction, allowing the jury to utilize the knowledge of Gonzalez's prior offense to prove motive, opportunity, intent or purpose, and any of the other facts listed in Evid.R 404(B). Gonzalez argues that in giving this instruction, the jury "was essentially told that [Gonzalez] knowingly committed the acts charged in Counts 2 and 3." Appellant's brief at 24.

{¶ 28} Gonzalez did not object to the jury instructions as given, therefore waiving all but plain error. *State v. Edgerson*, 8th Dist. Cuyahoga No. 101283, 2015-Ohio-593, ¶ 15. Plain error exists when trial defects affect a substantial right. Crim.R. 52(B). The error must constitute an obvious defect in the trial proceedings and must have affected the outcome at trial. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Appellate courts should "notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Id.* at ¶ 27, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 29} First, we note that not only did Gonzalez fail to object, but he was also made aware of the trial court's intention to give an Evid.R. 404(B) instruction well before it occurred and appeared to agree with the instruction. In the middle of trial, the following conversation occurred outside the presence of the jury:

> THE COURT: * * * I can read those instructions that they're only to consider [J.P.'s] testimony,[1] not for the truth of the matter but the 404(B) purposes and the effect on the victim. If you wanted me to or we can wait until the end.
>
> [DEFENSE COUNSEL]: Judge, I'm going to ask you to wait until the end because I don't think the 404(B) would come in at this particular point in time.
>
> THE COURT: Right.
>
> * * *
>
> THE COURT: It has to do with the prior but it's a little bit of that and it also has to do with your defense, it's a good instruction anyway.
>
> [DEFENSE COUNSEL]: I understand, but I think you should wait for it, please.

(Tr. 638.)

{¶ 30} We further note that during trial, the jury did not hear anything about Gonzalez's 2015 offense other than a brief statement that it occurred and that it was stipulated to. There was no testimony about the 2015 offense, nor were any facts about the prior conviction mentioned by either witness. Plainly, the jury did not hear any details or information about the offense from which they could have even applied the Evid.R. 404(B) analysis. In fact, the record indicates that the trial court

---

[1] Despite being listed as a witness, the state elected to rest before calling J.P. as a witness in this matter.

was especially careful to not permit evidence of Gonzalez's previous acts or crimes that were outside of the scope of the indictment. The jury heard ample evidence of Gonzalez's conduct as it occurred within the times specified by each indictment but did not hear any details about the 2015 offense beyond the mere fact that it occurred. After examining the evidence as presented, we cannot say that the trial court's instruction so substantially prejudiced Gonzalez that a manifest injustice occurred.

{¶ 31} Finally, a jury is presumed to follow the instructions given by the court, including any limiting instructions. *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637; *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032. The trial court's instruction forbade the jury from considering the prior charge as evidence of Gonzalez's character. The trial court, with the awareness that the jury knew of the 2015 offense, wanted to ensure that the evidence was considered properly. The Evid.R. 404(B) instruction represents the trial court's intent to ensure that the jury is properly evaluating evidence, which is indeed the duty of the trial court.

{¶ 32} The trial court did not err in giving an Evid.R. 404(B) instruction as it applied to Gonzalez's prior conviction. A review of the record reveals strong evidence in favor of conviction, rendering it unlikely that the jury based their convictions on the existence of a prior conviction alone. Because the trial court did not err, Gonzalez's second assignment of error is overruled.

## C. Detective Grabski's Testimony

{¶ 33} Gonzalez's third and fourth assignments of error are related and will be discussed together. In these assignments of error, he argues that Detective Grabski's testimony was improper, that trial counsel was ineffective for failing to object to the testimony, and that the trial court erred in failing to exclude the testimony. Gonzalez sets forth the same arguments to support both assignments of error.

{¶ 34} Gonzalez points to the following testimony from direct examination of Detective Grabski by the state.

> [STATE]: And at that point when you spoke to the victim in this case through e-mail, what did you learn was going on?
>
> [GRABSKI]: There was —
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT: Overruled.
>
> [GRABSKI]: There was a pattern of what we would consider stalking. She showed different times where he was 1 either calling her, texting her, or showing up where she's at. Like she stated —
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT: Overruled.
>
> [GRABSKI]: — leaving flowers on her porch and inside her car, so that was showing me that he was actually going on to her property, which is one of the stipulations in the ORC of menacing by stalking is going on someone's property.
>
> [STATE]: So after you received that first e-mail, that statement, you start realizing this is what the offense could be, what do you do next?

[GRABSKI]: After I spoke or read all the e-mails that Ms. N.M. sent me, I went down and got a warrant registered for Mr. Gonzalez. That was on I believe May 13th.

[STATE]: You mentioned there was [sic] a few e-mails or a few statements from the victim in this case?

[GRABSKI]: Numerous e-mails.

[STATE]: Okay. Why were there numerous e-mails?

[GRABSKI]: Because he kept on violating that code of menacing by stalking, she just kept getting things happening to her.

(Tr. 643-644.)

{¶ 35} Gonzalez argues Detective Grabski's statement was an impermissible legal conclusion and that his testimony did not comply with Evid.R. 701, which regulates lay witness testimony and states:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

{¶ 36} Gonzalez asserts that Evid.R. 701(2) was not met because Grabski's opinions instructed the jury that Gonzalez violated the menacing by stalking statute, which impermissibly tells the jury what result to reach. Gonzalez further argues that Detective Grabski's statement that going on N.M.'s property was "one of the stipulations in the ORC of menacing by stalking * * *" was an impermissible statement of law made to the jury. (Tr. 644.)

{¶ 37} Both Gonzalez and the state concede that the objections presented in the portions of the record at issue were for hearsay purposes. Gonzalez argues that

these objections should have been based upon impermissible legal conclusions and argues that the trial court would have sustained these objections. Generally, the decision to object is a tactical decision and the failure to make objections, standing alone, is not enough to sustain a claim for ineffective assistance of counsel. *State v. Frierson*, 2018-Ohio-391, 105 N.E.3d 583, ¶ 25 (8th Dist.). "[T]rial strategy or tactical decisions 'cannot form the basis for a claim of ineffective assistance of counsel.'" *Id.* at ¶ 15, quoting *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *State v. Sanchez*, 8th Dist. Cuyahoga No. 103078, 2016-Ohio-3167, ¶ 26. Further, "any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial * * * that failure to object essentially defaults the case to the state." *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 140.

{¶ 38} Gonzalez further argues that he received ineffective assistance of counsel because trial counsel failed to object to Grabski's conclusory testimony. Ineffective assistance of counsel requires a showing that (1) counsel's performance was deficient and fell below an objective standard of reasonableness and (2) that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the trial would have been different. *State v. Jenkins*, 2018-Ohio-483, 106 N.E.3d 216, ¶ 28 (8th Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "[E]very properly licensed attorney is presumed to be competent." *State v. Knight*, 8th Dist. Cuyahoga No. 109302, 2021-Ohio-3674, ¶ 47, citing *State v. Black*, 2019-Ohio-4977, 149 N.E.3d 1132, ¶ 35 (8th

Dist.), citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). The court must give significant deference to counsel's performance and "'indulge a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance.'" *Id.*, quoting *Strickland* at 689.

{¶ 39} After a review of the record as a whole and the reasoning cited by Gonzalez, we find that he failed to satisfy both prongs required for a finding of ineffective assistance of counsel. In particular, we note that on cross-examination of Detective Grabski, trial counsel questioned Grabski about the believability of the evidence and the frequency with which Grabski typically files charges or applies for a warrant in similar cases. The jury was free to judge the credibility of both witnesses based on the testimony elicited at trial. We cannot say that trial counsel's failure to object to Grabski's statements, which appeared to be a trial strategy given counsel's numerous other instances of objections during trial, so substantially prejudiced Gonzalez that the case defaulted to the state.

{¶ 40} Next, Gonzalez argues that the trial court committed plain error in permitting this testimony.

{¶ 41} The admission or exclusion of evidence is left to the sound discretion of the trial court. *State v. Rogers*, 8th Dist. Cuyahoga No. 105879, 2018-Ohio-3495, ¶ 15, citing *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). Because trial counsel did not object to the testimony, all but plain error is waived.

> In the absence of objection, any error is deemed to have been waived unless it constitutes plain error. To constitute plain error, the error must be obvious on the record, palpable and fundamental so that it

should have been apparent to the trial court without objection. *See State v. Tichon*, 102 Ohio App.3d 758, 767, 658 N.E.2d 16 (1995). Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. *State v. Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996). Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Phillips*, 74 Ohio St.3d 72, 83, 656 N.E.2d 643 (1995).

*State v. Potter*, 8th Dist. Cuyahoga No. 81037, 2003-Ohio-1338, ¶ 43.

{¶ 42} Under Evid.R. 701, "if testimony is based on an officer's training and experience, related to the officer's personal observations during an investigation, and helpful to determine facts in issue, the testimony is properly admitted as lay testimony[.]" *State v. Harris*, 8th Dist. Cuyahoga No. 108624, 2020-Ohio-4461, ¶ 53, citing *State v. Maust*, 8th Dist. Cuyahoga No. 103182, 2016-Ohio-3171, ¶ 18. Further, impressions or conclusions are admissible if they assist the jury's understanding or delineate a fact in issue. *State v. Marshall*, 8th Dist. Cuyahoga No. 100736, 2015-Ohio-2511, ¶ 25, citing *State v. Miller*, 5th Dist. Richland No. 2009-CA-0113, 2010-Ohio-3488, ¶ 50. Detective Grabski testified that he had 25 years of experience as a police officer, many of those specifically involving investigations of felony stalking cases. His testimony was based on his training and experience as a police officer, and his testimony likened Gonzalez's actions to those that he typically sees in stalking cases. His testimony represented his impression and opinion of the facts as they were reported to him. Gonzalez has not demonstrated that this testimony was prejudicial and further, that the trial court's failure to exclude Grabski's testimony would have resulted in a different outcome.

Under the constraints of a plain error analysis, we also cannot come to that conclusion based on the evidence presented, especially when considering all other evidence presented.

{¶ 43} Accordingly, Gonzalez's third and fourth assignments of error are overruled.

## D. Scope of Testimony on Redirect Examination

{¶ 44} In his fifth assignment of error, Gonzalez argues that testimony elicited from N.M. on redirect examination was outside of the scope of cross-examination.

{¶ 45} During trial, the following testimony was elicited during the state's redirect examination of N.M.

> [STATE]: Did there come a time where you learned he had been physical with women before?
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT: Sustained.
>
> [STATE]: Did there come a time that you learned he had been physical with a female before?
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT: Overruled.

(Tr. 611.)

{¶ 46} At this point, trial counsel asked to approach and the following occurred, outside earshot of the jury:

> THE COURT: Okay. So this is a going to come out already based on your — because we went over this, that the defense is [J.P.] is the one

that's compelling all this, she's telling the lies and she's motivating this. And so that's why we allowed only the discussion of what [J.P.] told the victim on that night. Is that what you're referring to?

[STATE]: Yes. Do you want me to say [J.P.] specifically?

[DEFENSE COUNSEL]: No, I never went into that. I talked about aggressive tendencies at the bars and things of that nature. I never went to this idea of aggressiveness with women, so that's outside the scope.

THE COURT: He's saying it's outside the scope.

[DEFENSE COUNSEL]: Outside the scope of his —

[STATE]: We went to aggressive tendencies in general.

[DEFENSE COUNSEL]: I was very specific about the aggressive tendencies and at the bars and things of that nature, not anything with women, so it's beyond the scope.

THE COURT: Any time you refer to anything just make sure it's always to [J.P.], okay?

[STATE]: Okay.

THE COURT: But I would say and you said — I don't recall your exact question whether or not to the bars exactly, but I mean I think that's already come out. You've got [J.P.] coming in. Move on.

[STATE]: Judge, the way that he presented cross-examination is that these mere small things that they should not have been afraid of, this is exactly why she was afraid of him. We've been going back into why she was afraid of.

THE COURT: Ask why you were afraid of him. Ask her that.

[STATE]: Okay.

(Tr. 612-613.)

{¶ 47} Following this sidebar, the following line of questioning occurred:

[STATE]: [N.M.], was there a time you became afraid of the defendant?

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

* * *

[STATE]: Was there a time when you had talked to anyone else that you then feared the defendant after that?

[DEFENSE COUNSEL]: Objection.

THE COURT: Okay. Did there come a time after you broke up with him or during the break-up time afterwards that you were ever in fear of the defendant?

[DEFENSE COUNSEL]: Objection.

[N.M.]: After?

THE COURT: After the break-up.

[N.M.]: After I said I don't want to deal with you anymore?

THE COURT: Yes.

[N.M.]: Okay. Yes, I did.

THE COURT: Why were you afraid of him?

[N.M.]: Because of what I had seen that he did to the other woman.

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

[N.M.]: Of the picture. Of the picture that I saw that was — I was told that that's what he —

[DEFENSE COUNSEL]: Objection.

(Tr. 614-615.)

{¶ 48} Gonzalez argues that the trial court erred in allowing this line of questioning about J.P. because trial counsel did not elicit anything about Gonzalez's prior relationship with J.P. on cross-examination. Gonzalez further argues that it was error for the trial court to interject and take over redirect examination because the jury gives the trial court's questioning more deference.

{¶ 49} "'The control of redirect examination is committed to the discretion of the trial judge and a reversal upon that ground can be predicated upon nothing less than a clear abuse thereof.'" *In re L.M.*, 8th Dist. Cuyahoga No. 105393, 2017-Ohio-8067, ¶ 15, quoting *State v. Wilson*, 30 Ohio St.2d 199, 204, 283 N.E.2d 632 (1972). Generally, the scope of redirect examination is limited to matters inquired into by the adverse party on cross-examination. *State v. Rucker*, 2018-Ohio-1832, 113 N.E.3d 81, ¶ 59 (8th Dist.), citing *State v. Thomas*, 8th Dist. Cuyahoga No. 101797, 2015-Ohio-3226, ¶ 41, and *Wilson* at 204.

{¶ 50} During cross-examination, trial counsel elicited testimony from N.M. demonstrating that Gonzalez was leaving flowers, teddy bears, and proposing marriage. Presumably, trial counsel was attempting to instill the notion that Gonzalez's gifts were tokens of affection — they were not threatening and could not have evoked a belief that he was going to harm N.M. Because of this, the state was within its right to clarify that Gonzalez's actions caused N.M. to believe that Gonzalez could cause her harm. Furthermore, none of the elicited testimony had not already been heard on direct or cross-examination.

{¶ 51} Finally, the trial court did not err in questioning the witness. In accordance with Evid.R. 614(B), a trial court may "interrogate witnesses, in an impartial manner, whether called by itself or by a party." This rule exists due to the trial court's obligation to "'control proceedings, to clarify ambiguities, and to take steps to insure substantial justice.'" *State v. Stadmire*, 8th Dist. Cuyahoga No. 81188, 2003-Ohio-873, ¶ 26, quoting *State v. Kay*, 12 Ohio App.2d 38, 49, 230 N.E.2d 652 (8th Dist.1967). Plainly, the trial court was attempting to nullify any confusion that arose from the line of questioning and narrow the scope upon which N.M. could base her answer. A trial court's interrogation of witnesses and comments are reviewed for an abuse of discretion. *State v. Redon*, 8th Dist. Cuyahoga No. 92611, 2009-Ohio-5966, ¶ 8. "'A judge abuses his discretion when he plays the part of an advocate, but the rule is not so restrictive that [a] judge is not permitted to participate in a search for the truth.'" *Redon* at *id.*, quoting *State v. Kight*, 4th Dist. Jackson No. 682, 1992 Ohio App. LEXIS 4727 (Sept. 9, 1992). We find that the trial court was not acting as an advocate; rather, it was attempting to narrow the scope of the evidence elicited and clarify ambiguities that arose from the state's line of questioning.

{¶ 52} As a result of the foregoing, Gonzalez's fifth assignment of error is overruled.

### E. Cumulative Error

{¶ 53} In Gonzalez's final assignment of error, he argues that the cumulative effect of the multiple errors cited herein amount to an unfair trial, warranting

reversal. As we have determined that there were no errors committed in the trial of this matter, Gonzalez's final assignment of error is overruled.

### III. Conclusion

{¶ 54} After thoroughly reviewing the record and law, we affirm Gonzalez's convictions. Gonzalez's convictions in Counts 2 and 3 were not against the manifest weight of the evidence. The trial court did not err in giving an Evid.R. 404(B) instruction. Trial counsel was not ineffective for failure to object to Detective Grabski's testimony nor did the trial court err in failing to exclude it. The redirect examination testimony regarding J.P.'s comments during the May 6 phone call was not outside of the scope of cross-examination. Finally, given that the trial court did not err, we find no merit to Gonzalez's request that we apply the cumulative error doctrine.

{¶ 55} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, JUDGE

ANITA LASTER MAYS, P.J., CONCURS IN JUDGMENT ONLY;
MARY EILEEN KILBANE, J., CONCURS IN JUDGMENT ONLY