[Cite as *R.W.B. v. T.V.*, 2024-Ohio-584.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| R.W.B., | : | |
| Petitioner-Appellee, | : | |
| | | No. 112883 |
| v. | : | |
| T.V., | : | |
| Respondent-Appellant. | : | |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 15, 2024

---

Civil Appeal from Cuyahoga County Court of Common Pleas
Case No. CV-22-963292

---

*Appearances:*

T.V., *pro se.*

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Respondent-appellant T.V. appeals from the trial court's decision granting a civil stalking protection order ("CSPO") in favor of petitioner-appellee R.W.B. After a review of the record and pertinent law, we conclude that the trial court did not abuse its discretion in granting the CSPO pursuant to R.C. 2903.211. We therefore affirm the trial court's judgment.

**Background**

{¶ 2} R.W.B. and T.V. are next door neighbors with a long history of animosity dating back to 2015 due to their dispute relating to a flooding issue and later over the property line. They have accused each other of trespassing, and both have called the police on numerous occasions. On May 11, 2022, R.W.B. filed the instant CSPO against T.V. based on multiple incidents in April and May 2022. During this time period, T.V. had a CSPO in place against R.W.B.

{¶ 3} On September 28, 2022, the magistrate held a full hearing on R.W.B.'s petition. R.W.B. represented himself and testified at great length at the hearing; he also presented testimony from his wife. T.V. was represented by counsel; he did not present testimony on his behalf, but R.W.B. and his wife were fully cross-examined by his counsel.

{¶ 4} R.W.B. testified that, in June of 2021, T.V. installed several cameras pointing at R.W.B.'s residence, including a front bedroom window. R.W.B. alleged the cameras were installed "to stalk and cause mental stress" to him and his wife. He testified that a buzzer emitting the sound of "whoo-hoo, whoo-hoo" would go off whenever he was out in his yard. He specifically testified to an incident on May 5, 2022, where he was planting grass in his front yard. The buzzer was emitting the sound the entire time he was in his yard, and at some point, T.V. returned home and started yelling at R.W.B. and calling him vulgar names in an attempt to provoke him and engage him in an altercation. R.W.B. testified that "I'm hysterically scared of this guy" and that he called the police that day. R.W.B. also recounted incidents on

May 13, 18, and 27, 2022; June 5, 10, 15, 19, 21, 26, 27, 28, and 29, 2022; July 3, 4, 7, 8, 10, 17, and 31, 2022; August 1, 3, 10, 17, 23, and 24, 2022; and September 2, 2022, where the buzzer went off repeatedly when he was outside in his yard. On some of these occasions, T.V. and his wife were not home. R.W.B. alleged that whenever one of the cameras detected his presence in his yard, the buzzer would emit the "whoo-hoo, whoo hoo" sound, sometimes persistently. R.W.B. testified that, because of the cameras and the sound device employed by T.V. to harass him, he could not go out in his front yard anymore.

{¶ 5} On cross-examination, when R.W.B. was asked if it was possible that the sounds coming from T.V.'s security cameras were triggered by motion, he answered in the negative, explaining that the buzzer did not always go off when he was near the cameras, nor did it go off when T.V. or his wife were in their yard, which indicated the sounds were not motion-triggered but rather intentionally set off by T.V. or his wife when they observed his presence in the cameras.

{¶ 6} R.W.B.'s wife testified that she has lived at their home for 22 years and, after T.V. and his wife moved in, she would not go outside anymore because she did not want to deal with the conflict. T.V. constantly yelled profanities at her husband. On one occasion, she was looking out the window when her husband was working on the yard, T.V. saw her, and he "popped [her] the finger." On another occasion, T.V. filmed her husband when he was doing yard work, trying to agitate him and get a reaction from him. She testified she "feels threatened" when she is out in the yard.

**{¶ 7}** After the testimony presented by R.W.B., T.V.'s counsel moved for directed verdict on the grounds that there was no testimony establishing mental distress warranting a CSPO. In response to the motion, R.W.B. asked the court to view a video from May 2022 obtained from his own security camera showing T.V. acted menacingly, filming him with a camera, and yelling at him when R.W.B. and his wife were out in the yard. The magistrate noted R.W.B. had already rested his case. R.W.B. then went on to argue in response to the motion for directed verdict that the testimony he presented proved by a preponderance of evidence the element of mental distress, arguing that T.V.'s taunting and threatening behavior upset him enough that his life "is totally ruined right now."

**{¶ 8}** After T.V.'s counsel presented his closing argument, R.W.B. again asked the court to play the video he referenced earlier. The court allowed R.W.B. to reopen his evidentiary presentation and play the video, over T.V.'s counsel's objection.[1]

**{¶ 9}** After the hearing, the magistrate issued a decision granting the CSPO, finding that the petitioner proved by a preponderance of evidence that the

---

[1] The court's permission for the video to be played after R.W.B.'s case-in-chief was concluded is one of the issues raised by T.V. in this appeal. As we explain in the following, T.V. did not cite any law for his objection to the additional presentation of the evidence and, therefore, we decline to address it in accordance with the appellate rules. We note, however, that Evid.R. 611 ("Mode and order of interrogation and presentation") would appear to govern the situation here. The rule states, in pertinent part: "(A) Control by court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth * * *."

respondent's conduct constituted a "pattern of conduct" required by the statute and, as demonstrated by the testimony of the petitioner and his wife, the respondent knowingly acted in order to cause the petitioner mental distress. T.V. filed an objection to the magistrate's decision. The trial court overruled the objection and adopted the magistrate's decision. This appeal follows.

**Appeal**

{¶ 10} On appeal, T.V., pro se, does not present assignments of error as required by App.R. 16. Rather, he presents five "issues" for our review. "Issue 1" states: "[The magistrate] erred when considering the witness testimony. All of the witnesses' testimony should have been excluded." "Issue 2" states: "Error in advice given by the respondent's counsel." "Issue 3" states: "The case record does not support by a preponderance of the evidence that Petitioner suffered Mental Distress." "Issue 4" states: "Magistrate gave the Petitioner a second chance after he rested his case." "Issue 5" refers to two other related cases that are not part of the instant record, and it states: "[The magistrate] erred allowing the Petitioner two additional opportunities to win his case [i]n the full hearing for [R.W.B.] v. [A.V.] and [R.W.B.] v. [M.V.]. During these hearing[s] the petitioner used this time to further testify against [T.V.]"

{¶ 11} Except for "Issue 3," T.V. fails to cite any relevant legal authority to support his argument for the "issues" he raises. As such, we decline to address them. App.R. 16(A)(7). *See e.g.*, *Walsh v. Walsh*, 8th Dist. Cuyahoga No. 112341,

2023-Ohio-1675 (it is not this court's duty to construct legal arguments to support an appellant's appeal).[2]

**Mental Distress**

{¶ 12} The third "issue" raised by T.V. concerns the element of mental distress in the menacing-by-stalking statute, R.C. 2903.211. T.V. contends the record does not prove by a preponderance of the evidence the element of "mental distress" required by the statute.

{¶ 13} R.C. 2903.214 governs protection orders to protect victims of menacing by stalking. A petitioner can obtain a CSPO by filing a petition alleging that the respondent violated R.C. 2903.211. Where there is a preponderance of the evidence that the respondent committed a violation of R.C. 2903.211, the court is empowered to issue a CSPO. *M.J.W. v. T.S.*, 8th Dist. Cuyahoga No. 108014, 2019-Ohio-3573, ¶ 22. "Preponderance of the evidence" is "the greater weight of the evidence, or evidence that leads the trier of fact to find that the existence of a contested fact is more probable than its nonexistence." *State v. Stumpf*, 32 Ohio St.3d 95, 102, 512 N.E.2d 598 (1987). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when

---

[2] We additionally note that pro se litigants are presumed to have knowledge of the law and legal procedures and they are held to the same standard as litigants represented by counsel. *State ex rel. Fuller v. Mengel*, 100 Ohio St.3d 352, 2003-Ohio-6448, 800 N.E.2d 25, ¶ 10.

he is aware that such circumstances probably exist." R.C. 2901.22(B). The decision whether to grant a CSPO is well within the sound discretion of a trial court, and we will not reverse its decision absent an abuse of that discretion. *Rufener v. Hutson*, 8th Dist. Cuyahoga No. 97635, 2012-Ohio-5061, ¶ 12.

{¶ 14} The menacing-by-stalking statute, R.C. 2903.211 states, in pertinent part: "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member * * * or cause mental distress to the other person or a family or household member * * *." R.C. 2903.211(A)(1).

{¶ 15} There is a "pattern of conduct" when there are "two or more actions or incidents closely related in time." R.C. 2903.211(D)(1). "In determining what constitutes a pattern of conduct, courts must take every action of the respondent into consideration, even if some of the actions in isolation do not seem particularly threatening." *Lewis v. Jacobs*, 2d Dist. Montgomery No. 25566, 2013-Ohio-3461, ¶ 10, citing *Middletown v. Jones*, 167 Ohio App.3d 679, 2006-Ohio-3465, 856 N.E.2d 1003, ¶ 10 (12th Dist.).

{¶ 16} On appeal, T.V.'s claim relates solely to the element of "mental distress." "Mental distress" means any of the following:

> (a) Any mental illness or condition that involves some temporary substantial incapacity;
>
> (b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received

psychiatric treatment, psychological treatment, or other mental health services.

R.C. 2903.211(D)(2).

{¶ 17} To obtain a CSPO, a petitioner is required to establish, by a preponderance of the evidence, that the respondent, by engaging in a pattern of conduct, "'caused the petitioner to believe he or she would cause [the] petitioner mental distress or physical harm, not that the respondent did in fact cause physical harm or mental distress.'" *J.A.C. v. A.L.*, 8th Dist. Cuyahoga No. 110999, 2022-Ohio-2275, ¶ 12, quoting *L.J. v. M.P.*, 8th Dist. Cuyahoga No. 109403, 2021-Ohio-312, ¶ 7. *See also M.D. v. M.D.*, 2018-Ohio-4218, 121 N.E.3d 819, ¶ 98-99 (8th Dist.), citing *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, and *State v. Horsley*, 10th Dist. Franklin No. 05AP-350, 2006-Ohio-1208, ¶ 48. Nothing in R.C. 2903.211 "'suggests that actual treatment by a professional is required to prove mental distress.'" *M.D.* at ¶ 99, quoting *Horsley* at ¶ 46. Mental distress need not be incapacitating or debilitating, and expert testimony is not required to find mental distress. *Rufener v. Hutson*, 8th Dist. Cuyahoga No. 97635, 2012-Ohio-5061, ¶ 17. Rather, the trial court "'may rely on its knowledge and experience in determining whether mental distress has been caused.'" *Id.*, quoting *Smith v. Wunsch*, 162 Ohio App.3d 21, 2005-Ohio-3498, 832 N.E.2d 757, ¶ 18 (4th Dist.).

{¶ 18} The magistrate here found the testimony showed that several cameras installed by T.V. made loud and constant noises whenever R.W.B. was

outside in his yard, from which it can be inferred that the sounds were purposely directed at R.W.B. The magistrate found that the constant emission of such a noise whenever R.W.B. was outside has caused him mental distress, noting that R.W.B. testified the noises have caused him such discomfort that he felt he can no longer go outside on his own property. The magistrate concluded R.W.B. demonstrated that T.V. knowingly acted in order to cause him mental distress.

{¶ 19} Having reviewed the record, we conclude that the trial court did not abuse its discretion in finding that petitioner R.W.B. has demonstrated by a preponderance of the evidence the element of mental stress required in the menacing-by-stalking statute. Mental stress need not be incapacitating or debilitating, and actual treatment by a professional is not required to prove mental distress. The trial court here was permitted to rely on its knowledge and experience in determining whether mental distress has been caused. For these reasons, we affirm the trial court's decision granting the CSPO in favor of the petitioner.

{¶ 20} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
EILEEN T. GALLAGHER, J., CONCUR