NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-5662

Z.J., APPELLEE, *v.* R.M., APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Z.J. v. R.M.*, Slip Opinion No. 2025-Ohio-5662.]**

*Menacing by stalking—R.C. 2903.211—Civil stalking protection order—R.C. 2903.214—A petitioner's belief that an offender will cause him mental distress is grounds for showing a violation of the menacing-by-stalking statute to obtain a civil stalking protection order—Court of appeals' judgment affirming trial court's judgment granting civil stalking protection order affirmed.*

(No. 2024-0340—Submitted February 13, 2025—Decided December 23, 2025.)

CERTIFIED by the Court of Appeals for Richland County,

No. 2022 CA 0071, 2023-Ohio-3552.

_____

HAWKINS, J., authored the opinion of the court, which FISCHER, DEWINE, DETERS, and SHANAHAN, JJ., joined. KENNEDY, C.J., dissented, with an opinion. BRUNNER, J., dissented.

**HAWKINS, J.**

{¶ 1} We are asked to decide what a petitioner must show under R.C. 2903.211, the menacing-by-stalking statute, to obtain a civil stalking protection order. R.C. 2903.211(A)(1) sets out two possible injuries that can give rise to such an order—physical harm or mental distress. But Ohio's courts of appeals have struggled in applying this provision when the alleged injury is mental distress. Some appellate courts have concluded that the petitioner must have actually experienced mental distress, while other appellate courts have held that as with physical harm, it is enough that the petitioner *believes* that the offender will cause him mental distress.

{¶ 2} In this certified-conflict case from the Fifth District Court of Appeals, both that court and the trial court concluded that the menacing-by-stalking statute required the petitioner seeking the protection order to believe only that the offender would cause him mental distress. But the Fifth District acknowledged that its interpretation of the statute placed its decision in conflict with decisions from other courts of appeals.

{¶ 3} We now resolve this conflict by holding that a petitioner's belief that an offender will cause him mental distress is grounds for showing a violation of the menacing-by-stalking statute to obtain a civil stalking protection order. We therefore affirm the Fifth District's judgment.

## Background

{¶ 4} Once linked by familial bonds, the parties here are now separated by resentment, animosity, and legal processes. Appellee, Z.J., and appellant, R.M., have known each other for more than 30 years. They attended the same church, and R.M. was, at one point, married to Z.J.'s cousin. Civility ended when R.M. began an affair with Z.J.'s wife.

**{¶ 5}** From then on, nearly every interaction between the two men seemed to devolve into a confrontation. During child-exchanges between Z.J. and his future ex-wife, R.M. would become provocative and confrontational, including one time when he continually dared Z.J. to hit him. On a different occasion, R.M., finding himself near Z.J.'s home, stopped across the street, revved his motorcycle until Z.J. came outside to investigate, and then left. And a chance encounter at a grocery store descended into R.M.'s seeking out Z.J. and Z.J.'s girlfriend so that R.M. could hurl personal insults at them and, by R.M.'s own admission, be an "asshole."

**{¶ 6}** For his part, Z.J. often gave as good as he got, escalating the cycle of confrontation. He regularly accused R.M. of being a pedophile, both during their face-to-face interactions and through posts and messages on social media. And on at least one occasion, Z.J. initiated hostile contact—confronting R.M. one Sunday when R.M. was attending church with Z.J.'s wife.

**{¶ 7}** Against this backdrop of enmity, Z.J. obtained an ex parte civil sexually-oriented-offense protection order naming R.M. as the respondent and designating Z.J. and his two minor children as the protected parties. Richland C.P. No. 21-CV-550, 1 (Nov. 8, 2021). Following a two-day full hearing, at which both Z.J. and R.M. testified, a magistrate granted a civil stalking protection order against R.M. and designated Z.J. as the only protected party.[1] Richland C.P. No. 21-CV-550, 1 (Jan. 18, 2022). In granting the protection order, the magistrate interpreted the menacing-by-stalking statute as requiring that the petitioner seeking a protection order to merely believe that the respondent intends to cause the petitioner mental distress. *Id.* at Exhibit A at 7.

---

1. In the opinion accompanying the protection order, the magistrate found that there was insufficient evidence indicating that R.M. had committed a sexual offense and, thus, no basis for designating Z.J.'s children as protected parties in the protection order. Richland C.P. No. 21-CV-550, Exhibit A at 8 (Jan. 18, 2022).

{¶ 8} R.M. objected to the magistrate's decision, arguing in part that the menacing-by-stalking statute required Z.J. to have experienced mental distress and that Z.J. had failed to make that showing. The trial court, concluding that binding precedent supported the magistrate's interpretation of the statute, overruled all but two of R.M.'s objections and adopted the magistrate's decision.[2] Richland C.P. No. 21-CV-550, 4-6, 15 (Sept. 13, 2022).

{¶ 9} R.M. appealed, and the Fifth District affirmed the trial court's judgment. First, the Fifth District noted its decision in *Bloom v. Macbeth*, 2008-Ohio-4564, ¶ 11 (5th Dist.), in which it held that under the menacing-by-stalking statute, a petitioner seeking a civil stalking protection order does not need to experience mental distress but only believe that the offender will cause physical harm or mental distress. 2023-Ohio-3552, ¶ 11 (5th Dist.). Then, applying that interpretation of the statute to the evidence here, the appellate court concluded that the trial court's judgment was supported by sufficient evidence and was not against the manifest weight of the evidence, finding that R.M. had engaged in a pattern of conduct causing Z.J. to believe that R.M. would cause physical harm or mental distress to Z.J. or his family. *Id.* at ¶ 22-25. One judge on the appellate panel concurred in the appellate court's judgment, agreeing with the court's disposition of R.M.'s appeal but stating that he disagreed with the holding in *Bloom* and opining that the menacing-by-stalking statute requires a victim to actually experience mental distress. *Id.* at ¶ 41-42 (Hoffman, P.J., concurring).

{¶ 10} The Fifth District's interpretation of the menacing-by-stalking statute placed its decision in conflict with decisions from the Fourth, Seventh, and Ninth Districts—all of which have concluded that the statute requires a victim to actually experience mental distress. *See Smith v. Wunsch*, 2005-Ohio-3498, ¶ 11

---

2. The trial court partially sustained two of R.M.'s objections and modified the protection order to allow R.M. to attend the church if Z.J. was not present—a modification not at issue in this appeal. Richland C.P. No. 21-CV-550, 13-15 (Sept. 13, 2022).

(4th Dist.); *Caban v. Ransome*, 2009-Ohio-1034, ¶ 23 (7th Dist.); *State v. Payne*, 2008-Ohio-5447, ¶ 7 (9th Dist.). The Fifth District entered an order certifying this conflict. No. 2022 CA 0071 (5th Dist. Mar. 4, 2024). We agreed that a conflict exists and ordered the parties to brief the conflict question certified by the Fifth District: "'Whether R.C. 2903.211(A)(1) requires a victim to actually experience mental distress or only believe that the stalker will cause the victim physical harm or mental distress, for a court to issue a civil stalking protection order.'" 2024-Ohio-1507, quoting No. 2022 CA 0071, at 7 (5th Dist. Mar. 4, 2024).

## Analysis

*Competing interpretations of R.C. 2903.211(A)(1)*

{¶ 11} Before resolving the conflict, we must define its scope. Under R.C. 2903.214(C)(1), a person may petition a common pleas court for entry of a civil stalking protection order against a respondent who the person claims engaged in a violation of R.C. 2903.211 against the person to be protected by the order. For its part, R.C. 2903.211(A)(1) sets forth the conduct, mental state, and consequences of a person's conduct that violate the menacing-by-stalking statute, stating: "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person . . . or cause mental distress to the other person . . . ."[3] The conflict here turns on what the verb "to believe" modifies. The conflict cases present two possible readings of R.C. 2903.211(A)(1).

{¶ 12} Under the first reading, R.C. 2903.211(A)(1) prohibits a person from (1) causing the victim to believe that he will suffer physical harm or (2) actually causing the victim mental distress. The conflict cases identified from the Fourth,

---

3. The menacing-by-stalking statute also prohibits a person from causing these same harms to another person's "family or household member." Because these additional terms do not alter the meaning of the language that we are interpreting in this opinion, we omit them from the discussion for the sake of clarity and readability.

Seventh, and Ninth Districts have all adopted this interpretation of the statute, but only one—*Caban*—explained its interpretation. In *Caban*, the respondent sought reversal of a decision granting a civil stalking protection order, arguing in part that the mental-distress element of R.C. 2903.211(A)(1) had not been proven. Before reaching that question, the court of appeals addressed whether the statute required the petitioner to actually have experienced mental distress or simply believe that the respondent would cause her mental distress. The Seventh District concluded that the General Assembly's repetition of "'to the other person' after both physical harm and mental distress, rather than merely placing it at the end of the sentence" showed that "to believe" does not modify "mental distress." *Caban* at ¶ 24. Then, applying that interpretation of the statute, the Seventh District concluded that there was insufficient evidence indicating that the respondent had knowingly caused the petitioner mental distress. *Id.* at ¶ 28-34.

{¶ 13} Although the Fourth and Ninth Districts did not engage in statutory interpretation, the results in *Smith* and *Payne* are consistent with this first reading of R.C. 2903.211(A)(1). While lacking a detailed explanation grounded in the statutory text, both decisions assess whether the evidence before the trial court showed that each offender had caused each victim's mental distress. *See Smith*, 2005-Ohio-3498, at ¶ 17-20 (4th Dist.); *Payne*, 2008-Ohio-5447, at ¶ 8-10 (9th Dist.). In doing so, the Fourth and Ninth Districts assumed without deciding that the first reading of the statute is the correct one.

{¶ 14} By contrast, the Fifth District's interpretation in this case aligns with a second reading of R.C. 2903.211(A)(1) as prohibiting a person from causing another person to believe that he will cause the other person to suffer (1) physical harm or (2) mental distress. 2023-Ohio-3552 at ¶ 11-12 (5th Dist.). Under this second reading, the petitioner's belief that the respondent will cause the petitioner to suffer physical harm or mental distress is enough to satisfy the statute's mental-

distress requirement. But here too, the Fifth District provides little explanation for *why* it has interpreted the statute in the way it has.

{¶ 15} The Fifth District's analysis points the reader to a pair of cases— *Bloom*, 2008-Ohio-4564, at ¶ 11 (5th Dist.), and *State v. Horsley*, 2006-Ohio-1208 (10th Dist.)—but those decisions also lack any analysis. Indeed, *Horsley* is the negative image of *Payne* and *Smith* because the Tenth District assumed that the menacing-by-stalking statute prohibits conduct that causes a victim to believe that the offender will cause the victim mental distress and applied that interpretation to the facts of that case. *Horsely* at ¶ 25, 45-48.

{¶ 16} We recognized the conflict at issue once before in *Fondessy v. Simon*, 2013-Ohio-5096, a case we ultimately dismissed as improvidently certified, *Fondessy v. Simon*, 2014-Ohio-4638, ¶ 1. As then-Justice Kennedy explained in a dissenting opinion when we dismissed *Fondessy*, the courts of appeals were divided on how to interpret the mental-distress requirement of R.C. 2903.211(A)(1). *Id.* at ¶ 16-21 (Kennedy, J., dissenting) (collecting cases). That division remains today.

{¶ 17} All told, the menacing-by-stalking statute has been subjected to inconsistent interpretations by the courts of appeals, resulting in uncertainty for trial courts and litigants and the unequal treatment of litigants, *id.* at ¶ 21 (Kennedy, J., dissenting). It is time we settled the question. And because doing so involves statutory interpretation, it is a question of law that we review de novo. *See Wayt v. DHSC, L.L.C.*, 2018-Ohio-4822, ¶ 15, citing *Ceccarelli v. Levin*, 2010-Ohio-5681, ¶ 8.

*The text of R.C. 2903.211(A)(1) shows that belief that mental distress will occur is enough*

{¶ 18} A statute that has been read two different ways by the courts of appeals requires careful parsing. Fortunately, the parsing of a statute is something we know how to do. When interpreting a statute, we do not ask "what did the general assembly intend to enact, but what is the meaning of that which it did

7

enact." *Slingluff v. Weaver*, 66 Ohio St. 621 (1902), paragraph two of the syllabus; *see also* R.C. 1.42. When the language of a statute is plain and unambiguous, "we must rely on what the General Assembly has said," *Jones v. Action Coupling & Equip., Inc.*, 2003-Ohio-1099, ¶ 12, and apply it as written, *Summerville v. Forest Park*, 2010-Ohio-6280, ¶ 18. Applying these principles to R.C. 2903.211(A)(1) reveals that the statute functions grammatically only if the verb "to believe" modifies both "physical harm" and "mental distress."

{¶ 19} Despite its tangled syntax, the first sentence of R.C. 2903.211(A)(1) is simple—at least grammatically. It does not fit easily into one of the four traditional sentence structures. *See Chicago Manual of Style* 293-294 (17th Ed. 2017). It does not consist of a series of independent clauses that would make it a compound sentence, nor does it consist of an independent clause followed by one or more dependent clauses that would make it a complex sentence. *See id.* at 293. Rather, it comes closest to a simple sentence consisting of a subject, a verb, and an object. *See id.* The complexity arises though from a series of compound constructions, but the different components of the sentence rely on each other to convey their complete meaning and communicate a single idea. *See id.*

{¶ 20} Reading the first sentence's text illustrates this point. The subject ("no person") and the verb ("shall knowingly cause") are clear. But the object becomes more complex. It is tempting to follow the pattern of simplicity and identify the object as "another person," but doing so leaves the clause incomplete— and the reader hanging. "Cause" is a transitive verb, *Webster's Third New International Dictionary* (1986); as such, it requires an object to complete its meaning, and it "indicates what action the subject exerts on the object," *Chicago Manual of Style* at 256-257. And it means "to serve as a cause or occasion of" something or "to effect by command, authority, or force." *Webster's*. Thus, when R.C. 2903.211(A)(1) says that "[n]o person . . . shall knowingly cause another person," the language and the syntax leave the reader asking: Cause another person

8

to do what?  Thankfully, R.C. 2903.211(A)(1) immediately supplies the answer by providing that the offender must not cause another person "to believe that the offender will cause" something.  Without that language, the sentence's initial clause is grammatically incomplete and meaningless.

{¶ 21} What is more, this structure matters because it guides the reader to the provision's meaning in its entirety.  The victim's belief is the predicate result caused by the offender's pattern of conduct.  And because "to believe" is what gives the first sentence's initial phrase grammatical integrity and meaning, "believe" must modify what comes after it.

{¶ 22} The back half of the first sentence then completes the front, explaining what it is that the offender must not cause the victim to believe.  The back half begins by describing the victim's belief as concerning "that the offender will" do something.  R.C. 2903.211(A)(1).  Just as with the sentence's initial clause, the statutory text leaves the reader in suspense, waiting for clarification.  And it is here that parallelism comes into play.  While parallelism satisfies a reader's desire "for order and rhythm," it also communicates to a reader how ideas relate to each other, by phrasing parallel ideas in parallel grammatical constructions.  Bryan A. Garner, *Garner's Modern English Usage*, 670-671 (4th Ed. 2016).  The two clauses that describe what the offender might do begin with the same verb—"cause"—signaling both structural and substantive symmetry.  Thus, by introducing both the clauses that communicate the prohibited results of the offender's actions in parallel form—"cause physical harm" and "cause mental distress"—the menacing-by-stalking statute's grammatical structure tells us that those two ideas are of equal importance.  When the back half of the sentence is read in its entirety, the structure makes clear that what the offender must not cause the other person to believe is that the offender will cause the victim physical harm or mental distress.

{¶ 23} A final grammatical point, though subtler than the others, reinforces our adoption of the second reading of the menacing-by-stalking statute.  When

introducing the victim as the object of the offender's prohibited conduct, the first sentence of R.C. 2903.211(A)(1) uses the indefinite phrase "another person." *See Chicago Manual of Style* at 250 ("An indefinite article points to a nonspecific object, thing, or person that is not distinguished from the other members of a class."). But then, throughout the rest of the sentence, R.C. 2903.211(A)(1) refers to the victim as "the other person," using the definite article to refer to a "definite object that . . . is so well understood that it does not need description," *Chicago Manual of Style* at 249. This construction signals continuity from the introductory clause through the rest of the sentence. The other person whom the offender might cause physical harm or mental distress is the same person who is first introduced at the beginning of the sentence. It naturally follows that because the physical harm is linked with the person whose belief the initial clause refers to, then so too is the mental distress.

{¶ 24} Taken together, the first sentence's grammatical elements convey a single, coherent meaning. For the initial clause to make grammatical sense, it must prohibit the offender from causing the victim to believe something. This phrase then introduces a parallel construction—a belief that the offender will cause physical harm or mental distress to the victim. And R.C. 2903.211(A)(1)'s use of a definite article to refer to the victim, who is the person whose belief is at issue, indicates that the same verb modifies the remaining clauses of the sentence.

{¶ 25} Turning from grammar to another tool of statutory construction, this understanding is confirmed by reading the first sentence of R.C. 2903.211(A)(1) in its broader context. In addition to discerning meaning from a provision's grammatical structure, we also consider the text as a whole. *See Vossman v. AirNet Sys., Inc.*, 2020-Ohio-872, ¶ 14 ("In interpreting a statute, we do not look at each word in isolation but rather consider the text as a whole."), citing *Great Lakes Bar Control, Inc. v. Testa*, 2018-Ohio-5207, ¶ 9, 11. Our focus until now has been on the first sentence of R.C. 2903.211(A)(1), but the second sentence of that provision

supports reading "to believe" as modifying both the physical-harm and the mental-distress clauses.

{¶ 26} The second sentence of R.C. 2903.211(A)(1) discusses what evidence may serve as proof that an offender's conduct violated the statute, stating:

> In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person . . . or mental distress to the other person . . . , the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

Here, again, for this sentence to be coherent, it must be read as recognizing that a victim's belief in future physical harm or mental distress satisfies the statute.

{¶ 27} The second sentence's use of the possessive is significant. In identifying what this sentence concerns, the text tells us that it concerns what evidence may form the basis of "the other person's belief." R.C. 2903.211(A)(1). This phrase in the second sentence requires further explanation, because we are left asking, "Belief in what?" And it is immediately followed by the same phrase we read earlier in the first sentence—"that the offender will cause" physical harm or mental distress to the other person. Like the first sentence of R.C. 2903.211(A)(1), breaking up this construction to have "belief" modify only physical harm leads to grammatically unsound constructions. Two examples illustrate this grammatical quagmire.

{¶ 28} In the first example, if we read the second sentence of R.C. 2903.211(A)(1) as consisting of an introductory phrase ("In addition to any other basis for the other person's") that modifies the belief-in-physical-harm and

actual-mental-distress clauses separately, then we would be left with a nonsensical phrase: "In addition to any other basis for the other person's . . . mental distress to the other person . . . ."

{¶ 29} Similar problems arise with the second example, in which we shorten the second sentence's introductory phrase a few words to read "[i]n addition to any other basis for the" but still have that phrase modify the same injury clauses. To be sure, the reading would separate out the victim's belief in such a way that it modifies only physical harm. But this reading also would leave us with grammatically incomplete and nonsensical phrases making up the rest of the sentence. The introductory phrase would be subject to an unnatural division from the rest of the sentence that would make it grammatically incomplete and unintelligible. And it would leave the mental distress element to read "[i]n addition to any other basis for the . . . mental distress to the other person . . . , the other person's belief or mental distress may be based" on the offender's words and conduct—another unnatural phrase. In sum, this example reveals an act of syntactical violence that makes sense only if it is meant to achieve a desired interpretative outcome, rather than seeking to understand what the text actually says.

{¶ 30} By contrast, when the second sentence of R.C. 2903.211(A)(1) is read to have "the other person's belief" as modifying both physical harm and mental distress, the sentence follows a natural rhythm and structure. We begin with a fully formed introductory phrase ("In addition to any other basis for the other person's belief") that is immediately clarified with what amounts to a verbal phrase ("that the offender will cause") and a parallel structure that refers to the verbal phrase ("physical harm" or "mental distress"). Like the first sentence of R.C. 2903.211(A)(1), the grammatical structure of the statute's second sentence becomes coherent only when "belief" is understood as modifying "physical harm" and "mental distress."

{¶ 31} As a result, when R.C. 2903.211(A)(1) is read in its entirety and for grammatical coherence rather than ambiguity, it becomes clear that "believe" in the first sentence and "person's belief" in the second sentence modify both "physical harm" and "mental distress."

*R.M.'s textual arguments do not withstand grammatical scrutiny*

{¶ 32} In his brief, R.M. provides no independent statutory analysis. Instead, he relies on a single paragraph from *Caban*, 2009-Ohio-1034 at ¶ 24 (7th Dist.), in which the Seventh District reasoned that the menacing-by-stalking statute's repetition of "to the other person" after both "physical harm" and "mental distress" shows that "to believe" modifies only physical harm and not mental distress. Repetition alone, though, does not signify what R.M. claims.

{¶ 33} The first sentence of R.C. 2903.211(A)(1) is a coherent unit, with each element of the sentence depending on the others for its complete meaning. Reading "believe" as modifying only "physical harm" destroys that unity. Start with the basic structural observations made earlier. The first half of the sentence gives the reader the subject ("no person") and the verb ("shall knowingly cause") elements of the sentence. What follows is the object—the result that the subject causes. By contrast, the back half of the sentence is not a grammatically independent clause; it does not introduce a separate subject and verb. To be sure, the language describes the offender's causing physical harm or mental distress. But for both the physical-harm and mental-distress clauses, the verb "cause" is joined to its subject by the same auxiliary verb "will," which itself flows from the victim's belief that the offender will act. Even though the physical-harm and mental-distress clauses each repeat "to the other person," their coherence relies on their relation back to the rest of the sentence. This leads to the second problem with trying to read "believe" as modifying only "physical harm."

{¶ 34} If one reads the first sentence of R.C. 2903.211(A)(1) in the way R.M. suggests, the physical-harm clause makes sense: "No person by engaging in

a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person . . . ." That is fine. But the mental-distress clause becomes problematic: "No person by engaging in a pattern of conduct shall knowingly . . . cause mental distress to the other person . . . ." While that clause might be grammatically correct, the construction loses coherence. That reading of the mental-distress clause introduces "the other person" without any antecedent or anchor, leaving unclear to whom that phrase is referring. Worse still, it interrupts the verbal phrase "shall knowingly cause" with a lengthy clause that, under this reading, has nothing to do with mental distress. That is a far more strained reading of the first sentence of R.C. 2903.211(A)(1) than one that uses the statute's structural clues to resolve ambiguities rather than create them.

{¶ 35} R.M.'s core textual argument is that if the General Assembly intended for "to believe" to modify both "physical harm" and "mental distress," then it would have written R.C. 2903.211(A)(1) differently. To be sure, the statute is not a masterclass in legislative drafting. But when, as here, the text of even a poorly drafted statute supports a coherent and grammatically sound reading, our role is to read and apply it as written—not to improve the General Assembly's prose. And the natural reading of R.C. 2903.211(A)(1) reveals that a victim's belief that an offender will cause him mental distress is enough to establish a violation of the menacing-by-stalking statute.

*We need not consider R.M.'s other arguments*

{¶ 36} Given the paucity of his textual arguments, the bulk of R.M.'s brief provides other arguments as to why we should interpret R.C. 2903.211(A)(1) in his preferred way. For example, he argues that the General Assembly sought to proscribe actions that cause actual—rather than prospective—mental distress or that absurd results will follow should we construe R.C. 2903.211(A)(1) as requiring only a victim's belief that an offender will cause him mental distress. Similarly, R.M. urges us to apply the rule of lenity—a principle of statutory construction under

14

which ambiguous penal statutes are strictly read against the State, *see State v. Elmore*, 2009-Ohio-3478, ¶ 37-38; *id.* at ¶ 40, citing *United States v. Johnson*, 529. U.S. 53, 59 (2000), *Gozlon-Peretz v. United States*, 498 U.S. 395, 410 (1991), and *State v. Green*, 2006-Ohio-6695, ¶ 24 (11th Dist.). But these arguments help us discern the General Assembly's intent only when, unlike here, the statute's text is ambiguous and does not convey a definitive meaning. *See Ohio Neighborhood Fin., Inc. v. Scott*, 2014-Ohio-2440, ¶ 23, citing *State v. Porterfield*, 2005-Ohio-3095, ¶ 11; *see also Bailey v. Republic Engineered Steels, Inc.*, 2001-Ohio-236, ¶ 11, citing R.C. 1.49.

{¶ 37} Although understanding the text of R.C. 2903.211(A)(1) requires work, that does not mean that the text is ambiguous. Therefore, considering policy-based arguments or resorting to the tools used to resolve ambiguity are neither necessary nor appropriate to discern the meaning of R.C. 2903.211(A)(1) or resolve the conflict here. *See Gabbard v. Madison Local School Dist. Bd. of Edn.*, 2021-Ohio-2067, ¶ 13.

*We reject the dissent's interpretation of R.C. 2903.211(A)(1)*

{¶ 38} The dissent, too, would have us abandon grammatical and contextual coherence. The dissent focuses on the main clause of the second sentence of R.C. 2903.211(A)(1), arguing that the part of that clause describing the types of evidence that can be used to show "the other person's belief or mental distress" requires us to reach a different conclusion. *See* dissenting opinion, ¶ 53. Because the General Assembly used the word "or" between "belief" and "mental distress," R.C. 2903.211(A)(1)—the dissent claims—requires either a belief that physical harm will occur or actual mental distress to establish the offense of menacing by stalking. *See id*.

{¶ 39} In reaching that conclusion, however, the dissent dismisses our grammatical analysis of the first sentence of R.C. 2903.211(A)(1) and it misapplies the rule of lenity to the second sentence. As we have emphasized above, a

grammatically and contextually coherent reading of R.C. 2903.211(A)(1) is possible only when the words "believe" in the first sentence and "person's belief" in the second sentence are read as modifying both "physical harm" and "mental distress." To read the statute otherwise produces unsound and unworkable constructions.

{¶ 40} The dissent then advances its troubled reading of R.C. 2903.211(A)(1)'s second sentence, concluding that that sentence is "incoherent and unambiguously self-contradictory," dissenting opinion at ¶ 65. The dissent draws our attention to the two clauses that make up that sentence. The first clause reads: "In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person . . . or mental distress to the other person. . ." R.C. 2903.211(A)(1). That clause thus refers to two potential beliefs that are sufficient for liability: a "belief that the offender will cause" (1) "physical harm to the other person" or (2) "mental distress to the other person." *Id.* The second clause in turn lists the types of evidence that can be used to show "the other person's belief or mental distress." *Id.* According to the dissent, the first clause recognizes that a belief in future mental distress is sufficient for liability but the second clause—which juxtaposes belief and mental distress—does not. *See* dissenting opinion at ¶ 65.

{¶ 41} The dissent seeks out this supposed conflict so that it can dismiss our grammatical analysis and appeal to the rule of lenity, codified in Ohio in R.C. 2901.04(A). That rule, the dissent correctly points out, is applicable only "when, 'after all the legitimate tools of interpretation have been applied, "a reasonable doubt persists,"'" *State v. Pribble*, 2019-Ohio-4808, ¶ 23 (lead opinion), quoting Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*, 299 (2012), quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990).

{¶ 42} But the dissent has not exhausted all the legitimate tools of interpretation, so the rule of lenity is not applicable here. When an incoherent

interpretation of a statute would result, such as the dissent's reading of R.C. 2903.211(A)(1), the General Assembly has explicitly provided that "'[a]nd' may be read 'or,' and 'or' may be read 'and' if the sense requires it," R.C. 1.02(F). This rule of construction "'operates to avoid inadvertent consequences when logic demands.'" *State ex rel. Stevens v. Fairfield Cty. Bd. of Elections*, 2018-Ohio-1151, ¶ 16, quoting *State v. Jones*, 2007-Ohio-6093, ¶ 16. To the extent that the word "or" within the phrase "the other person's belief or mental distress" causes unsound readings of R.C. 2903.211(A)(1), logic demands that "or" be read as "and."

{¶ 43} The dissent also takes issue with the practical application of our interpretation. *See* dissenting opinion at ¶ 70-72. According to the dissent, a petitioner's belief in future mental distress, unlike actual mental distress, "is not susceptible of proof," *id.* at ¶ 72. Whether a petitioner is likely to succeed in proving future mental distress, though, is not a factor that we should consider in a statutory-interpretation analysis. R.C. 2903.211(A)(1) is clear and unambiguous, so we apply it as it is written. *See Boley v. Goodyear Tire & Rubber Co.*, 2010-Ohio-2550, ¶ 20.

{¶ 44} Rather than "dissociate words and phrases from [their] context," *Gabbard*, 2021-Ohio-2067, at ¶ 22, we read R.C. 2903.211(A)(1) in its entirety. To give effect to the only coherent reading of R.C. 2903.211(A)(1), we reject the dissent's interpretation of the statute.

## Conclusion

{¶ 45} When construing statutes, we often repeat the phrase that a statute "means what it says." *See, e.g.*, *Everhart v. Coshocton Cty. Mem. Hosp.*, 2023-Ohio-4670, ¶ 13. And so it does here—though arriving at this meaning has required more technical analysis than usual. But this isn't grammatical hairsplitting. It is applying the rules of grammar to understand what the General Assembly wrote and what that text means.

**{¶ 46}** The Fifth District certified the following question for review: "'Whether R.C. 2903.211(A)(1) requires a victim to actually experience mental distress or only believe that the stalker will cause the victim physical harm or mental distress, for a court to issue a civil stalking protection order.'" 2024-Ohio-1507, quoting No. 2022 CA 0071, at 7 (5th Dist. Mar. 4, 2024). The answer to that question lies within the statute's structure. Both R.C. 2903.211(A)(1)'s grammar and context show that a victim's belief that an offender will cause him mental distress is enough to show a violation of the menacing-by-stalking statute. And because R.C. 2903.214(C)(1) requires only a showing that a respondent in a civil-stalking-protection-order proceeding has violated R.C. 2903.211, it follows that a petitioner need not show that he has suffered actual mental distress—but only a belief that the respondent will cause him mental distress—to obtain a civil stalking protection order.

**{¶ 47}** We therefore resolve the certified conflict by affirming the judgment of the Fifth District Court of Appeals.

Judgment affirmed.

———————————

**KENNEDY, C.J., dissenting.**

**{¶ 48}** This is a case about a statute, R.C. 2903.214, which permits a court to issue a civil stalking protection order when the subject of the order—the respondent—has violated R.C. 2903.211, a criminal statute.

**{¶ 49}** R.C. 2903.211(A)(1) defines the offense of menacing by stalking. R.C. 2903.211(A)(1) therefore serves two purposes—it creates a criminal offense, and it serves as the basis for the issuance of a civil stalking protection order, the violation of which may result in the imposition of a criminal penalty, *see* R.C. 2919.27(A)(2) and (B).

**{¶ 50}** R.C. 2903.211(A)(1) provides in its first sentence that "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe

that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person." Its second sentence states, "In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person . . . or mental distress to the other person . . . , the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs."

{¶ 51} In this certified-conflict case, we are asked to resolve "'[w]hether R.C. 2903.211(A)(1) requires a victim to actually experience mental distress or only believe that the stalker will cause the victim physical harm or mental distress, for a court to issue a civil stalking protection order.'" 2024-Ohio-1507, quoting No. 2022 CA 0071, 7 (5th Dist. Mar. 4, 2024). The majority concludes that R.C. 2903.211(A)(1) is unambiguous and holds that the person seeking the order—the petitioner—may obtain a civil stalking protection order if he or she believes that the respondent will cause mental distress in the future. I disagree.

{¶ 52} Although the majority's reading of R.C. 2903.211(A)(1) is *a* possible reading of the statute, it is not patently the single best one. In my view, R.C. 2903.211(A)(1) is ambiguous, and the traditional tools of interpretation do not resolve the ambiguity—"'there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what [the legislature] intended,'" *Maracich v. Spears*, 570 U.S. 48, 76 (2013), quoting *Barber v. Thomas*, 560 U.S. 474, 488 (2010). The first sentence of R.C. 2903.211(A)(1) can be read grammatically in two different ways. And the second sentence is unambiguously self-contradictory.

{¶ 53} The rule of lenity provides that "ambiguity in a criminal statute is construed strictly so as to apply the statute only to conduct that is clearly proscribed." *State v. Elmore*, 2009-Ohio-3478, ¶ 38. And although this case

19

concerns a civil stalking protection order, it necessarily requires the court to construe R.C. 2903.211(A)(1), a criminal statute. *See Clark v. Martinez*, 543 U.S. 371, 380 (2005) (citing cases applying the rule of lenity in civil contexts to statutes with criminal applications). The rule of lenity therefore applies here, and strictly construing R.C. 2903.211(A)(1) requires the court to hold that the offense of menacing by stalking is committed when a person engages in a pattern of conduct and knowingly (1) causes another person to believe that the offender will cause physical harm to the other person or (2) causes mental distress to the other person.

{¶ 54} Accordingly, I dissent and would answer the certified conflict by holding that a trial court may not issue a civil stalking protection order when the petitioner merely shows that he or she believes that the respondent will cause mental distress in the future.

## Statutory Interpretation

{¶ 55} This case presents a question of statutory interpretation. In determining the meaning of a statute, "[t]he question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact." *Slingluff v. Weaver*, 66 Ohio St. 621 (1902), paragraph two of the syllabus. This court applies clear and unambiguous statutes as written. *See Boley v. Goodyear Tire & Rubber Co.*, 2010-Ohio-2550, ¶ 20. However, a statute is ambiguous when "there are two equally persuasive and competing interpretations of the law." *State ex rel. Ferrara v. Trumbull Cty. Bd. of Elections*, 2021-Ohio-3156, ¶ 21. "When interpreting a statute, a court does not declare a statute to be ambiguous merely because there are two different ways to define a statutory term. Instead, the court must simply read the language of the statute, as informed by the canons of construction and context, and determine whether one best reading emerges." *State v. Gwynne*, 2023-Ohio-3851, ¶ 20 (lead opinion).

**R.C. 2903.211(A)(1)**

{¶ 56} R.C. 2903.211(A)(1) consists of two sentences. The first sentence specifies the prohibited conduct that constitutes the offense of menacing by stalking, and the second sentence discusses what types of evidence may serve as proof that an offender's conduct violated the statute.

{¶ 57} Again, R.C. 2903.211(A)(1)'s first sentence says that "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person . . . or cause mental distress to the other person." Because this sentence uses the word "cause" multiple times, it may be read two different ways as to mental distress: (phrasing 1) no person "shall knowingly cause another person to believe that the offender will . . . cause mental distress to the other person" or (phrasing 2) no person "shall knowingly . . . cause mental distress to the other person."

{¶ 58} The majority says that the first phrasing is the only way to read R.C. 2903.211(A)(1)'s first sentence, and it provides a complex grammatical analysis of the statute to explain why. Although "[w]e do not . . . parse the statute as grammarians or treat it as an abstract exercise in lexicography," *Beauharnais v. Illinois*, 343 U.S. 250, 253 (1952), I concede that the majority's construction of R.C. 2903.211(A)(1) is a reasonable one.

{¶ 59} However, the second phrasing of R.C. 2903.211(A)(1)'s first sentence is also grammatically permissible, and it is not incorrect to say that the statute can be read to require proof of actual mental distress. The first sentence can be diagrammed this way:



Note that the sentence splits into separate paths following the phrase "shall knowingly," and one of those paths—the lower one—requires proof of actual mental distress.

{¶ 60} Consequently, there are two equally persuasive and competing interpretations of R.C. 2903.211(A)(1)'s first sentence. A review of the canons of construction set forth in Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*, 107, 180, 195, 199 (2012), does not lead us to a single best reading of the first sentence. For example, the harmonious-reading and associated-words canons do not dispel the ambiguity, while others like the negative-implication canon and ejusdem generis do not apply.

{¶ 61} The second sentence of R.C. 2903.211(A)(1) does not resolve the ambiguity but rather adds to the confusion. This sentence says, "In addition to any other basis for the other person's *belief* that the offender will cause physical harm to the other person . . . *or mental distress* to the other person . . . , the other person's *belief or mental distress* may be based on words or conduct of the offender that are

directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs." (Emphasis added.) R.C. 2903.211(A)(1).

{¶ 62} The second sentence's main clause unambiguously distinguishes between (1) creating the belief that physical harm will be suffered and (2) causing actual mental distress. For that main clause to mean that a person engages in menacing by stalking by simply creating a belief that mental distress will occur, the court would have to strike out three words from the second sentence: "the other person's belief ~~or mental distress~~ may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs." Or it would have to add 13 words: "the other person's belief <u>that the offender will cause physical harm</u> or <u>belief that the offender will cause</u> mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs."

{¶ 63} Neither is permissible, because "it is the duty of this court to give effect to the words used [in a statute], not to delete words used or to insert words not used," *Columbus-Suburban Coach Lines, Inc. v. Pub. Util. Comm.*, 20 Ohio St.2d 125, 127 (1969). The second sentence's main clause plainly provides that the types of evidence identified may be used to prove either a "belief" that physical harm will occur or actual "mental distress"—not just a "belief" that mental distress will occur. Standing alone, the second sentence's main clause is unambiguous. Contrary to the majority's assertion, *see* majority opinion, ¶ 42, this analysis does not depend on whether the General Assembly used the word "or" in a way that means "and."

{¶ 64} The dependent clause in the second sentence contradicts that sentence's main clause. It states, "In addition to any other basis for the other

person's *belief that the offender will cause physical harm* to the other person . . . *or mental distress* to the other person . . ." (Emphasis added.) R.C. 2903.211(A)(1). As the majority correctly points out, the dependent clause refers to "two potential beliefs that are sufficient for liability"—the belief that the offender will cause physical harm and the belief that the offender will cause mental distress. Majority opinion at ¶ 64.

{¶ 65} The second sentence of R.C. 2903.211(A)(1) is therefore incoherent and unambiguously self-contradictory. Its dependent clause refers to two beliefs that are relevant—that the offender will cause physical harm to the other person or that the offender will cause mental distress to the other person—while its main clause refers only to the other person's "belief or mental distress."

{¶ 66} Therefore, when read as a whole, R.C. 2903.211(A)(1) is ambiguous, and the traditional canons of interpretation such as the whole-text canon, the general-specific canon, and the harmonious-reading canon do not resolve the ambiguity beyond a reasonable doubt. *See State v. Pribble*, 2019-Ohio-4808, ¶ 23 (lead opinion); Scalia & Garner at 167, 180, 183, 299. The majority does not point to any specific canons that I have missed.

{¶ 67} "The rule of lenity is properly applied when, 'after all the legitimate tools of interpretation have been applied, "a reasonable doubt persists."'" *Pribble* at ¶ 23, quoting Scalia & Garner at 299, quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990). Put differently, the rule of lenity comes into play when a criminal statute is grievously ambiguous. *See id.* And although this case involves a *civil* stalking protection order, the operative language at issue here comes from a criminal statute—R.C. 2903.211(A)(1)—and "we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context," *Leocal v. Ashcroft*, 543 U.S. 1, 11, fn. 8 (2004).

24

**Application of the Rule of Lenity**

{¶ 68} The Generally Assembly codified the rule of lenity in R.C. 2901.04(A): "Except [in situations not relevant here], sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." We therefore must construe a grievously ambiguous criminal statute "so as to apply the statute only to conduct that is clearly proscribed." *Elmore*, 2009-Ohio-3478, at ¶ 38.

{¶ 69} Here, R.C. 2903.211(A)(1) is grievously ambiguous, and we must choose the construction that favors the accused and hold that the statute proscribes engaging in a pattern of conduct and knowingly causing actual mental distress to another person. The accused's causing the other person to believe that he or she will suffer mental distress in the future is insufficient to violate R.C. 2903.211(A)(1).

{¶ 70} In addition, the majority's interpretation makes little sense in practice. A petitioner seeking a civil stalking protection order can prove that the respondent knew that his or her words or actions would cause the petitioner to believe that physical harm is imminent. Jill waves an axe at Jack; Jack threatens to shoot Jill. Objective proof is also available to prove the existence of actual mental distress, such as the description of symptoms or a diagnosis. But how does a petitioner ever prove that the respondent knew that his or her words or actions would cause the petitioner to believe that he or she will suffer mental distress in the unspecified future?

{¶ 71} Keep in mind that the statute defines "mental distress" as either "[a]ny mental illness or condition that involves some temporary substantial incapacity" or "[a]ny mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment,

psychological treatment, or other mental health services," R.C. 2903.211(D)(2)(a) and (b).

{¶ 72} So, in theory, to obtain a civil stalking protection order under the majority's reading of the statute, a petitioner would have to establish a belief—presumably a reasonable belief—that conduct that did not cause mental distress in the present would nonetheless cause a substantial incapacity or a condition requiring mental-health treatment in the future. But in practice, such a belief is not susceptible of proof.

{¶ 73} We also must be mindful of the consequences of the majority's reading of the statute. Under the majority's construction, the offense of menacing by stalking requires proof of another person's belief that the offender will cause physical harm or mental distress. That means that an offender does not engage in menacing by stalking if he or she causes actual mental distress to another person in the present without also creating the belief that the other person will suffer mental distress in the future—i.e., it would not be a crime to cause mental distress through a pattern of conduct. That is an absurd result.

**Conclusion**

{¶ 74} On one point, I agree with the majority—R.C. 2903.211(A)(1) "is not a masterclass in legislative drafting," majority opinion at ¶ 35. But in my view, the statute is also grievously ambiguous, and according to the rule of lenity, R.C. 2903.211(A)(1) must be construed to require proof of actual mental distress. Therefore, a violation of R.C. 2903.211(A)(1) occurs when the offender's pattern of conduct causes actual mental distress to another person, not when a belief of future mental distress is created.

{¶ 75} For these reasons, I dissent and would answer the certified conflict by concluding that R.C. 2903.211(A)(1) requires a victim either to believe that physical harm is imminent or to experience mental distress before a court may issue a civil stalking protection order.

_____

Z.J., pro se.

Darin Avery, for appellant.

Dave Yost, Attorney General, Mathura J. Sridharan, Solicitor General, and Jana M. Bosch, Deputy Solicitor General, urging affirmance for amicus curiae, Ohio Attorney General Dave Yost.

_____