[Cite as *T.K. v. D.O.*, 2026-Ohio-352.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| T.K., | : | |
| Petitioner-Appellee, | : | |
| | | No. 115177 |
| v. | : | |
| D.O., | : | |
| Respondent-Appellant. | : | |

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 5, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-25-116105

---

### *Appearances:*

Maxwell Martin, *for appellee.*

D.O., *pro se.*


MICHAEL JOHN RYAN, P.J.:

{¶ 1} Respondent-appellant D.O. ("appellant"), pro se, appeals the trial court's decision granting a civil stalking protection order ("CSPO") in favor of petitioner-appellee T.K. ("appellee"). Finding no merit to the appeal, we affirm.

{¶ 2} On April 12, 2025, appellee made a police report regarding several instances of concerning behavior by appellant. On April 21, 2025, appellee filed for a CSPO. The order was granted ex parte, and the matter set for a full hearing, which was held on April 30, 2025.

{¶ 3} Appellee testified that she is employed as an elementary school principal and was in her first year as principal of the subject elementary school. Appellant is the parent of a child at that school. According to appellee, she first encountered appellant on the second day of the 2024-2025 school year. Appellee assumed appellant was school staff because he was wearing a "welcome back to school" staff shirt. Appellant told appellee he was a parent of a student and "very highly involved" so she would be "seeing a lot of him." (Tr. 15.)

{¶ 4} The second time appellee encountered appellant was in September 2024, when appellant approached appellee at a PTA meeting and told appellee that "he hoped he didn't have to roast me in front of other parents" like he did with the principal at his other child's school, whom appellant said he "humiliated" because that principal tried to limit when parents could be on school campus. *Id.* Appellant told appellee that if she tried to do the same, he would make it so that she would "hope the floor would drop out below me so I could just disappear because if he has to he will humiliate me in front of people." (Tr. 15-16.) Appellee testified that this interaction made her uncomfortable.

{¶ 5} In the beginning of October, the principal encountered appellant in the school drop-off line. Appellant told appellee that he did not recognize her because

she was not wearing a dress, stating that he expected to, and wanted to, see her in a dress. Again, appellee felt uncomfortable.

{¶ 6} On October 15, 2024, appellee encountered appellant in the school hallway where he told her, "I'm glad to see you in a dress again" and "I want to see your legs. I expect to see you in a dress. I like to see your legs." (Tr. 20–21.) According to appellee, appellant was standing close to her when he made the statements. Appellee described appellant's tone as "definitely very sexually intonated. In fact, when he made the comment, he gave a glance down and a glance up seeing that I was in a dress" and was looking at her legs and body. (Tr. 23.) This encounter made appellee "very uncomfortable." (Tr. 24.) The principal contacted the school's human resources director and reported the interaction. She also took her concerns to the school superintendent.

{¶ 7} Appellee's next encounter with appellant was in February 2025, at a school board meeting. When appellee was standing up in front of the meeting, appellant, who was sitting in the first row, asked, "Where is your dress tonight?" (Tr. 26.) He also stated to appellee, "I expect to see you in a dress" and "I want to see your legs in a dress." (Tr. 27.) Appellee testified that the way the appellant looked at her was "very concerning," she felt "very uncomfortable," and it "made [her] skin crawl." *Id.* At this point, appellee told appellant to "stop." *Id.* After the meeting, appellee immediately contacted the superintendent and indicated that the situation was urgent. She also supplemented her previous complaint with human resources.

{¶ 8} The school subsequently banned appellant from school grounds and sent a memo to school staff indicating that appellant was not permitted to be in any school building without 24-hour written notice from the superintendent.

{¶ 9} Appellee testified that she became aware that appellant made a public records request for information about her and was provided three months of appellee's badge swipe records, which showed when she arrived and left school property. She also became aware that appellant had a felony record and had spent time in prison. And, despite being banned, appellant continued to come on school property, making at least three unpermitted visits to the school after the ban had been implemented.

{¶ 10} Appellee told the court that she had not been able to work for the last week "because of the panic attacks" she had when she entered the school building, the surrounding area, or the town where appellant lives. (Tr. 38.) Appellee testified that she had sought medical treatment because of the panic attacks. When asked whether appellant's conduct caused her mental distress, appellee answered "yes" and explained that she was in "fear" and "terrified" of appellant. *Id.* Appellee told the court, "I fear for my life every day. I fear he is a violent person. I don't know what he might do because his behaviors, when I've put restriction or I've tried to protect myself in seeking just a sexual harassment or a harassment board of policy complaint and he got restrictions to the building, his reaction to that was not to stop." (Tr. 39.)

{¶ 11} According to appellee's testimony, she was "terrified of this man" because of his "repeated behaviors that started with the intimidation, the sexual harassment comments. [The ban] was put in place and — to protect myself and the students and staff at our school and he has violated it." (Tr. 32-33.)

{¶ 12} Appellant admitted to making comments to appellee about the way she dressed but stated that he made the comments because he was "relieved" that appellee was not wearing a skirt because he found skirts to be "inappropriate" and thought that there should be a "wardrobe policy" for school staff. (Tr. 52.) He showed the court pictures he had obtained of the principal where he testified he thought her dress was inappropriate because her knees were bare.

{¶ 13} Appellant admitted requesting records regarding appellee's work schedule, stating he sought the principal's badge swipe records to show she was not working the hours required by her contract. Appellant further admitted that he did not have permission to be on school grounds after he was banned but testified that he did not need permission despite the ban. Appellant admitted that he had a past felony conviction for retaliation and had served time in prison. Finally, appellant stated that he had recently pulled a petition to run for school board.

{¶ 14} The trial court granted the CSPO for a period of five years, finding by a preponderance of the evidence that appellant had knowingly engaged in a pattern of conduct that caused appellee to believe that appellant would cause or had caused her physical harm or mental distress. The court ordered that appellant must not be present within 500 feet of appellee and ordered appellant not to abuse, harm,

attempt to harm, threaten, follow, stalk, or harass appellee. The notice stated that appellant must remain in his car if he had to provide transportation for his child. The order also covered two of appellee's family or household members.

{¶ 15} Appellant appealed and raises one assignment of error for our review in which he argues that the trial court's decision to grant the CSPO was not supported by the evidence. He does not challenge the scope of the CSPO.

{¶ 16} R.C. 2903.214 governs protection orders to protect victims of menacing by stalking. A petitioner can obtain a CSPO by filing a petition alleging that the respondent violated R.C. 2903.211. Where there is a preponderance of the evidence that the respondent committed a violation of R.C. 2903.211, the court is empowered to issue a CSPO. *M.J.W. v. T.S.*, 2019-Ohio-3573, ¶ 22 (8th Dist.). A "preponderance of the evidence" is "the greater weight of the evidence, or evidence that leads the trier of fact to find that the existence of a contested fact is more probable than its nonexistence." *State v. Stumpf*, 32 Ohio St.3d 95, 102 (1987).

{¶ 17} When an appellant challenges whether the protection order should have been issued, we consider whether the trial court's decision was supported by "'sufficient competent, credible evidence.'" *In re R.K.*, 2020-Ohio-35, ¶ 13 (8th Dist.), quoting *In re E.P.*, 2011-Ohio-5829, ¶ 18 (8th Dist.). But the decision whether to grant a CSPO is well within the sound discretion of a trial court, and we will not reverse its decision absent an abuse of that discretion. *R.W.B. v. T.V.*, 2024-Ohio-584, ¶ 13 (8th Dist.), citing *Rufener v. Hutson*, 2012-Ohio-5061 (8th Dist.). An abuse of discretion occurs when a court exercises "its judgment, in an

unwarranted way, in regard to a matter over which it has discretionary authority."
*Abdullah v. Johnson*, 2021-Ohio-3304, ¶ 35.

{¶ 18} R.C. 2903.211(A)(1) provides, in part, that

[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person. In addition to any other basis for the other person's belief that the offender will cause physical harm . . . or mental distress . . . the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

{¶ 19} In order to obtain a CSPO, the petitioner is required to establish, by a preponderance of the evidence, that the respondent, by engaging in a pattern of conduct, caused the petitioner to believe the respondent would cause the petitioner mental distress or physical harm. The Ohio Supreme Court recently clarified that even the mere belief that a respondent will cause the petitioner mental distress "is grounds for showing a violation of the menacing-by-stalking statute to obtain a [CSPO]." *Z.J. v. R.M.*, 2025-Ohio-5662, ¶ 3.

{¶ 20} In this case, appellant contends that the evidence did not establish a pattern of conduct or show that he acted knowingly.

{¶ 21} A "pattern of conduct" exists when there are "two or more actions or incidents closely related in time." R.C. 2903.211(D)(1). "In determining what constitutes a pattern of conduct, courts must take every action of the respondent into consideration, even if some of the actions in isolation do not seem particularly

threatening." *R.W.B.*, 2024-Ohio-584, at ¶ 15 (8th Dist.), citing *Lewis v. Jacobs*, 2013-Ohio-3461 (2d Dist.).

{¶ 22} Appellee testified that appellant made inappropriate comments to her on several occasions between September 2024 and February 2025. Three of those interactions were comments about appellee's body, the way she dressed, and the way appellant thought she should dress. Besides the words themselves, appellee testified that appellant's tone of voice and the way he looked at her caused her distress. Appellee testified that she had panic attacks, sought medical treatment, and had not been able to work for the week prior to the CSPO hearing because of appellant's harassing behavior. While at first appellee felt "uncomfortable" by appellant's behavior, appellant's continued behavior left her in "fear" and "terrified," especially when she found out that appellant had accessed her badge swipe records, continued to show up at school despite being banned from the premises, and after she learned of appellant's criminal history. Appellee testified, "I fear for my life every day. I fear he is a violent person. I don't know what he might do because his behaviors, when I've put restriction or I've tried to protect myself in seeking just a sexual harassment or a harassment board of policy complaint and he got restrictions to the building, his reaction to that was not to stop." (Tr. 39.)

{¶ 23} Based on the totality of appellant's actions, we find that the trial court's determination that appellee established a pattern of conduct is supported by competent and credible evidence in the record.

{¶ 24} Appellant also argues that there was insufficient evidence to show that he acted "knowingly." According to appellant, his comments were not meant to harass appellee but were made because he was "happy" that appellee was not dressed like she was "at a beach." (Appellant's brief p. 12.) According to appellant, he was "praising her" for "not wearing flash[y] and skintight clothing." *Id.*

{¶ 25} R.C. 2901.22(B) provides that a person acts "knowingly," regardless of his or her purpose, when the person is aware that his or her conduct "will probably cause a certain result or will probably be of a certain nature." "A person has knowledge of circumstances when he [or she] is aware that such circumstances probably exist." *Id.*

{¶ 26} Appellant first approached appellee on the second day of the school year, telling her that if she tried to limit access to the school, he would humiliate her like he had previously done to another school principal. Appellee continued to make inappropriate and suggestive comments, remarking on the way appellee was dressed, saying that he liked seeing her in a dress, liked her legs, and wanted to see her legs. Appellant admitted he accessed records that showed when appellee arrived and departed the school building. Appellant admitted that he went to the school even after being banned from the premises, stating that he did not think he needed permission to be on school property, despite knowledge of the ban. He also admitted he had a felony record and had been to prison.

{¶ 27} Based on this, appellant's repeated acts can be characterized as nothing less than knowing attempts to cause appellee to believe that appellant would cause her physical harm or mental distress.

{¶ 28} Finally, appellant argues that his conduct is constitutionally protected under the First Amendment. We disagree.

{¶ 29} The First Amendment to the United States Constitution provides in part that "Congress shall make no law . . . abridging the freedom of speech." The First Amendment's protections are not absolute. Certain classes of speech, such as "'threatening words, obscene speech, fighting words, speech that interferes with the rights of others, speech that creates a clear and present danger, and defamatory speech,'" are not covered by the First Amendment. *J.B. v. O.S.Y.*, 2022-Ohio-3226, ¶ 86 (8th Dist.), quoting *State v. Plants*, 2010-Ohio-2930, ¶ 46 (5th Dist.).

{¶ 30} Ohio courts, including this court, have held that knowingly causing another to believe one will cause physical harm or mental distress to him or her by engaging in two or more actions or incidents closely related in time does not qualify as protected speech. *J.B.* at ¶ 87; *Kreuzer v. Kreuzer*, 144 Ohio App.3d 610, 614 (2d Dist. 2001); *State v. Benner*, 96 Ohio App.3d 327 (1st Dist. 1994). In *J.B.*, this court noted that the menacing-by-stalking statute "does not chill constitutionally protected speech or conduct." *Id.*, citing *State v. Smith*, 126 Ohio App.3d 193 (7th Dist. 1998).

{¶ 31} Here, the trial court issued the CSPO because appellant engaged in a pattern of conduct that caused appellee to believe appellant would harm her or cause her mental distress, not because appellant exercised his First Amendment rights.

{¶ 32} The sole assignment of error is overruled.

{¶ 33} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MICHAEL JOHN RYAN, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
DEENA R. CALABRESE, J., CONCUR